## WESTERLO *vs.* DE WITT.

The law is jealous of all dispositions of property made by persons in extreme illness, and particularly in the immediate prospect of death. It requires, as a general rule, that their property should be disposed of in writing, according to certain forms and solemnities, and in the presence of at least two witnesses. *Per* CLERKE, P. J.

When the law recognizes any other disposition of such property, it requires positive and unequivocal proof of the gift. The intention must be clear and undisputed. *Per* CLERKE, P. J.

C., being extremely ill and conscious that she could not recover, and being the owner of a certificate of deposit in the New York Life Insurance and Trust Company, for $1500, requested W. to bring to her, from a place specified, a roll of paper. A parcel containing the certificate of deposit and about $600 in bank notes, being brought to her, she opened it, counted over the bank notes, opened the certificate and read it, then rolled them together in the same paper, and pinned them together. She then handed the parcel to W., saying, "I give this to you; this is for yourself; no one knows any thing about it, and I do not wish to tell of it." She then directed W. to put the parcel away where she had found it. No specific mention of the certificate was made, and no indorsement or assignment thereof was executed. *Held* that C. did not intend to make a gift of the certificate of deposit to W. LEONARD, J. dissented.

CATHARINE J. CLINTON, deceased, in her lifetime owned a certificate of deposit, made by the New York Life Insurance and Trust Company, by which the company promised to pay to her, or her assigns, the sum of $1500, upon the conditions stated in said certificate. Mrs. Clinton, on or about the 24th day of June, 1855, being very ill, and conscious that she could not recover, delivered to Cornelia L. Westerlo said certificate, and also a roll of bank bills, amounting to about $600, and said, "Nelly, I give this to you; this is for yourself; no one knows any thing about it; I do not wish to tell of it." She also said she had remembered Miss Westerlo in her will, in addition. Mrs. Clinton died on the 2d day of July, 1855. The said Cornelia L. Westerlo retained possession of the certificate from the time of its delivery to her by Mrs. Clinton till after Mrs. Clinton's death. After Mrs. Clinton's death, and on or about July 5th, 1855, Cornelia L. Westerlo called upon the defendant,

(who was then and is now a practicing attorney and coun-
sellor at law,) and stating to him the facts detailed in her
testimony, asked his professional advice and opinion as to
whether she was the owner of said certificate. He advised
her that she was not the owner of it, but that he, as executor
of the donor's will, was entitled to it. Relying upon the cor-
rectness of this opinion, she delivered the certificate to him.
This action was brought upon the ground that such advice
was incorrect; that Cornelia L. Westerlo was at that time
the lawful owner of such certificate, and entitled to the fund
represented by it, and its surrender under the circumstances
did not defeat or impair her right. The defendant has col-
lected and now holds the amount of such certificate. The
certificate was, before the commencement of this action,
assigned by said Cornelia L. Westerlo to the plaintiff. The
cause was referred to a referee, who reported in favor of the
plaintiff, and the defendant appealed from the judgment en-
tered on his report.

*Charles Jones*, for the appellant. I. The plaintiff failed to
prove the cause of action alleged. (1.) The defendant did not
act or profess to act as counsel for Miss Westerlo. He was
not retained or consulted by her as counsel, but was called
on merely as executor, to receive the certificate, if he deemed
it a part of the assets of the estate. The fact that he was a
lawyer does not affect the question as to the capacity in which
he acted. (2.) The defendant received the certificate and
collected the money as executor, and not otherwise, and this
to the knowledge and with the consent of Miss Westerlo, the
assignor of the claim. The claim, if any, is against the estate,
or the defendant as executor, and not against him individually.

II. The cause of action alleged in the complaint is not
assignable; and if it were, the plaintiff has not by the as-
signments produced on the trial obtained a title to the claim.
(*Zabriskie* v. *Smith*, 3 *Kern.* 322.)

III. The title to the certificate of deposit in question was

never in the assignor of the plaintiff, (Miss Westerlo,) but the certificate belonged to Mrs. Clinton at the time of her death. The plaintiff's only claim of title is that the certificate was a gift from Mrs. Clinton to Miss Westerlo—a *donatio causa mortis*—and the evidence is insufficient to show that it was a valid gift. (1.) There was no actual delivery of the certificate by Mrs. Clinton to Miss Westerlo, nor did Mrs. Clinton part with its possession during her lifetime. The conversation was of a parcel rolled and pinned up. The certificate was not shown to Miss Westerlo, nor was the character of the paper or amount mentioned. At the very time of the alleged delivery, Mrs. Clintion directed the parcel to be returned to the pocket of her dress, thus retaining her ownership over it. This exercise of control and ownership continued for two days afterwards, when it was brought by Miss Westerlo from the pocket of Mrs. Clinton's dress, and again returned by her like direction to this same place. The certificate was in the pocket of this same dress until after the death of Mrs. Clinton, and was never in Miss Westerlo's possession till she took it after that time from this pocket. (2.) There is not sufficient evidence to show that Mrs. Clinton intended to give the certificate, or the moneys thereby represented, to Miss Westerlo. There was no gift of the certificate *eo nomine*. Mrs. Clinton was a business woman, and knew the necessity of an indorsement or assignment of the certificate to enable the holder to collect the money. If Mrs. Clinton had intended to give the certificate, she would have stated what it was, and either have indorsed or assigned it. It is evident that Mrs. Clinton merely intended to furnish Miss Westerlo with money to pay small bills, &c., and to allow her to keep what was not required for that purpose, in case she (Mrs. Clinton) should die. Miss Westerlo's statements, made within a few days after the time of the alleged gift, show that she did not understand Mrs. Clinton as intending to give her the certificate. (3.) The facts found by the referee do not entitle the plaintiff to recover. There

is no valid *donatio causa mortis* proved or found. (*Ward*
v. *Turner,* 2 *Ves.* 431. *Pennington* v. *Gittings' Ex'rs,* 2 *Gill*
& *John.* 209. *Harris* v. *Clark,* 3 *Comst.* 93. 2 *Kent's Com.*
439, 444. *White's Lead. Eq. Cases,* 49 *Law. Lib., N. S.,*
583, 595, *and notes.*)

IV. Claims of this kind are not favored by the courts, for
the reason that they are in derogation of the statute in rela-
tion to last wills and testaments, and requiring none of the
solemnities prescribed for a testamentary disposition of prop-
erty. This is a marked case, and the circumstances under
which the claim is made are suspicious. The *donee* is the
only witness, and she, in important particulars, is contradict-
ed by *three* witnesses. Then, the secresy of the gift; the
locking of the door; the exclusion of all witnesses; the keep-
ing of the declarations of Mrs. Clinton a secret until after
her death; the finding of the property in the pocket of the
dress of the deceased; the fact that the certificate cannot
be *used* by the donee; that she was. an attendant upon the
deceased in her last illness, and that pecuniary provision had
been made for her in the will of the deceased: all these
things throw suspicion upon the claim, and should be con-
sidered by the court in determining its validity.

*John N. Whiting,* for the respondent. I. The certificate
was susceptible of being passed by delivery, and represented
and constituted a right, and an interest which could have
been enforced by action, as in the case of any other *mere
chose in action.* It is a certificate of deposit for $1500,
issued by the New York Life Insurance and Trust Company,
for two years, commencing May 10th, 1855, and ending May
10th, 1857; the interest is payable half-yearly to deceased,
her legal representatives or special attorney. The princi-
pal is payable only at the end of the time limited in the
certificate, May 10th, 1857, to the deceased, her special at-
torney, legal representatives, or assigns. The certificate is
assignable only on the books of the company. The *fund* is

assignable.   The beneficial interest might be pledged or assigned by parol, and become vested in the assignee, and the certificate as a *chose in action* becomes assignable for that purpose; but as to the company, the certificate must be produced and a transfer made on its books.   As to the deceased, or her representatives, the certificate remains in their hands, in trust for the real owner, with full notice of the transfer. (*Willard's Eq.* 462, 463, *and cases there cited.   1 Pars. on Contr.* 192, *and cases cited.   2 Kent's Com.* 7th ed. 413.   2 *Barb. S. C. Rep.* 98.)

II.  The delivery of the certificate by Mrs. Clinton to Miss Westerlo, for the purposes found, constituted a *donatio causa mortis,* and vested the title absolutely in Miss Westerlo. Facts proved, showing that the gift was so made:   (1.) Family relationship and long continued intimacy of the parties. (2.) Continued residence together, and service on the part of Miss Westerlo to deceased, and the promise to remain with and take charge of Mrs. Clinton until her death, which was imminent—likely to be sudden, and to give no time for testamentary or other disposition.   After illness, and in prospect of speedy death.   (3.) The act of the deceased of writing down remembrances for different friends, and intrusting Miss Westerlo with that office.   Her announcement that she was growing weaker.   (4.) The immediate circumstance attending the gift.   1st. Taking a roll of paper and contents, and declaring, " I give this to you; this is for yourself; no one knows any thing about this; I do not wish to tell of it." That she was remembered in her will, in addition.   2d. The " safest place was then designated—a dress (already given by her will to Miss Westerlo, and which came to her possession at Mrs. Clinton's death,) and suggestions made as to the place and manner of keeping the property in safety.   3d. The professions of attachment, acknowledgment of service, and that the donation was in consideration of it.   (5.) After this time, and with the certainty of death more fully impressed upon her, she was handed, by Miss Westerlo, *the parcel;*

the deceased looked at it, recognized it, and requested it to be returned to the same condition and custody it was before, and assumed no diminion or control over it.   (6.)  The continued possession and control by Miss Westerlo, until, under the advice of the defendant, it was delivered to him, (his advice being given professionally,) without waiving any rights, and in entire ignorance as to what legal course ought to be pursued.  (7.)  At the first opportunity, Miss Westerlo voluntarily told Mrs. Jones and the executor, of the facts, claiming the property as a gift, acknowledging then and now her readiness to be governed by competent advice and authority. (8.)  The money, which was in the same roll of paper with the certificate, has always been from the time of its delivery until now in the possession of Miss Westerlo, under this same claim of *donatio causa mortis*.  (*Lawson* v. *Lawson*, 1 *P Wms*. 441.  *Gardner* v. *Parker*, 3 *Madd.* 184.  *Bailey* v. *Snellgore*, 3 *Atkyns*, 214.  *Miller* v. *Miller*, 3 *P. Wms.* 536.  *Harris* v. *Clark*, 3 *Comst.* 93.)  *The gift was made in view of the donor's death, and was conditioned to take effect on the death of the donor by her existing illness.  She had been told of her death being certain, and knew it.  She was preparing mementoes for her friends.  She complained of growing weaker and weaker.  She manifested all the premonitions of a speedy dissolution.  All the incidents of the transaction point only to that event.  There was a delivery of the subject of the donation; the donor parted with possession and dominion.  Miss Westerlo had manual possession and delivery of the certificate, accompanied with the strongest expressions denoting parting of dominion.  The donor requested it to be put in a dress, which was bequeathed to the donee, and would and did come to her directly upon death, and then, for greater precaution and protection, requested the locking the closet and barricading the door. When the parcel was handed down by donee, the donor immediately said, " this is not *what I want*," handed it back to donee, and requested it might be placed as before, and*

indicated that her dominion over it was at an end. The donee could not have done any thing different from what was done with the parcel after its delivery to her, (had it been her own by any title,) except to have carried it on her person, and her receiving and adopting Mrs. Clinton's suggestions as to location, made no difference. Such possession continued after death until now. As to the money, this is undoubtedly true; the donee has had it since July, 1855; both it and the certificate were in the same parcel. As to the one, no question is made of the gift, delivery, possession or ownership. As to the other, all these incidents are brought in question by the erroneous action and advice of the defendant himself. As to the *effect* of the delivery of the certificate of trust: 1st. The certificate of trust is a *chose in action ;* it is an obligation for debt. 2d. There are some cases in which something short of an actual delivery and transfer of a *chose in action* will operate as an equitable assignment of the whole, or some part of it. No particular form of words is necessary for this purpose. Any language which indicates a clear intention to appropriate the fund will effectuate the object. An appropriation of the fund was all that the nature of the case admitted of, and therefore it will be held good in equity. (*Willard's Eq.* 462, 463. 2 *Story's Eq.* 409.) 3d. With regard to the instrument by which an assignment may be made, it has been held that delivery for a valuable consideration, of a *chose in action,* without writing, is a sufficient transfer. (*Willard's Eq.* 462. 19 *John.* 96. 17 *id.* 284. 11 *id.* 538. 1 *id.* 580. *Roberts on Frauds,* 275.) Assignment by parol of a bond, lease, or mortgage, accompanied with delivery, is good. (17 *John.* 21. 11 *id.* 538. *Morton* v. *Naylor,* 1 *Hill,* 584. *Canfield* v. *Monger,* 12 *John.* 347. *Bradley* v. *Root,* 5 *Paige,* 632. *Grangiac* v. *Arden,* 10 *John.* 293. *Coutant* v. *Schuyler,* 1 *Paige,* 316. 2 *Story's Eq.* 406, *notes* 2 *and* 3.)

III. The donee of the property being in possession of it, and claiming to be its owner, having consulted the defendant

in the relation and with the intention proved, and having
been fully advised thereupon, and upon the faith of the ad-
vice having delivered the certificate to him, if the advice was
erroneous, no title, as against her or her assigns, passed to him,
and she would be entitled to recover the value of the cer-
tificate in this form of action.    It is manifest that Miss Wes-
terlo consulted with the defendant in his capacity as a *lawyer*.
She was referred to him as such.    It was his *legal* opinion on
her right that she wanted.    It was this that he gave.    She
knew him to be such, and to have sustained intimate and con-
fidential professional relations to her deceased friend, to be the
custodian of her estate.    Every thing called for the utmost
frankness and confidence in the moral relations of the two,
and the fact that he was a lawyer, advising on a legal ques-
tion, under such circumstances, *ex vi termini*, established
a fiduciary relation.    Her whole confidence, trust and faith
was induced, was given, was received, and when received was
the basis of her action.    Had she received other advice, she
would not have delivered the certificate, and the conclusion
is irresistible that she delivered it under the advice of Mr. De
Witt as a lawyer.    As to the incidents of the relations be-
tween them, how far they will be recognized and protected,
see *March* v. *Ludlum*, (3 *Sandf. Ch. R.* 35.)

This being established, we say the advice was erroneous;
that Mr. De Witt was mistaken, and Miss Westerlo was
thereby induced under a mistake to deliver up the certificate;
that Mr. De Witt, in no capacity, got any title to it.    We
cannot sue the defendant *as executor*, because he got no
title as such.    If we are right, Miss Westerlo owned the
certificate, and he, not as executor, but as an individual, got
possession of it under a mistake of all parties, which he pro-
duced by his wrong advice.    He got possession, then, not as
*executor*, but personally.    He stands as if he were not the
executor, and never had been, and there were no estate.    If
Miss Westerlo surrendered the certificate to the defendant,
because *she* was ignorant of the fact that she was owner of

it, a court of equity will relieve her from her mistake. (1 *Story's Eq.* 136, §§ 121, 122.) If surrendered through a *mutual* mistake of fact, in respect to which the defendant was as much bound to inquire as she, she may recover. (*Bank of Commerce* v. *Union Bank,* 3 *Comst.* 237. 1 *Hill.* 290. 4 *Kern.* 147. 1 *P. Wms.* 727, 239.) The act against which the plaintiff seeks relief, was the result of misplaced confidence in the defendant, who stood in a fiduciary relation to her. For this reason, she may have the relief sought. (*Willard's Eq.* 64, 65, 67. *Wheeler* v. *Smith,* 9 *How.* 55.)

IV. The transfers to the plaintiff by Miss Westerlo are ample to convey the title to the certificate, the right to the money mentioned in it, and the cause of action existing in Miss Westerlo's favor against the defendant. (*McKee* v. *Judd,* 2 *Kern.* 626. 1 *E. D. Smith,* 522, 526, 527. 3 *id.* 355, 252. *Hoyt* v. *Thompson,* 1 *Seld.* 347. 19 *Wend.* 73.)

CLERKE, P. J. The law is wisely jealous of all dispositions of property made by persons in extreme illness, and particularly in the immediate prospect of death. Knowing their probable mental debility and susceptibility at this dread hour, it requires, as a general rule, that their property should be disposed of in writing according to certain forms and solemnities, and in the presence of at least two witnesses. When it recognizes any other disposition of it, it requires positive and unequivocal proof of the gift. The intention must be clear and undisputed. Any other rule would expose dying persons to imposition and importunities, and their estates to encroachments, which the common law, even more than the civil law, has always carefully endeavored to prevent.

The law, then, requiring this positive and unequivocal proof of the intention, has such proof been adduced in this case? Taking all that Miss Westerlo has testified as true and uncontradicted, I cannot think it warranted the conclusion at which the referee has arrived. Where is the clear

and unequivocal proof which the law requires, that Mrs. Clinton intended to make a donation to Miss Westerlo of the certificate ? Miss Westerlo testifies that Mrs. Clinton told her to bring from the pocket of one of her dresses, in a closet, a *roll of paper ;* that she brought the parcel to her ; that Mrs. Clinton opened the parcel, counted over the bills, opened the certificate and read it, then rolled them together in the same paper and pinned them together ; she then called Miss Westerlo to her and handed the parcel to her, and said, " Nelly, I give this to you ; this is for yourself ; no one knows any thing about it, and I do not wish to tell of it ;" she then told her to put the parcel away where she had found it. There were about six hundred dollars in the roll of bank bills. She never said a word specifically of the certificate, but told Miss Westerlo, in the first instance, to bring her a roll of paper from the closet. Several items of indebtedness had accrued during her illness which she was anxious should be particularly attended to, and that Mrs. Jones, at whose house she was staying, should be at no expense for her. She first gave Miss Westerlo ten or twelve dollars out of a drawer, to pay for things as they were needed, but items to the amount of one hundred and twelve dollars had accrued, or were accruing, which Miss Westerlo afterwards paid out of the six hundred dollars. Now, I can very well conceive that this dying woman, anxious to avoid inconvenience and expense to her hostess, and desirous that the most trifling items incurred by her at this time should be promptly paid, without being compelled to wait until the executors could pay such claims in the due administration of the estate, intended to hand Miss Westerlo this roll of bills, and to allow her, in consideration of her attention and kindness, to keep the balance for her own use. But I cannot believe, if she intended to make a gift of the certificate, that she would not have specifically said so. Instead of this, as we have seen, she never said a word about it ; she did not even use the word certificate, or make any allusion whatever to her deposit in the New York Life Insur-

Westerlo *v.* De Witt.

ance and Trust Company. Whatever may be the legal effect of handing to Miss Westerlo a certificate of deposit, if the intention was unequivocally manifested, without indorsement or assignment, Mrs. Clinton must have known, as a woman accustomed to affairs of this nature, that without such indorsement and assignment, it would have given her donee at least a great deal of trouble to realize it; and, to my mind, it is clear, if she intended to make a gift of the certificate, she would have done every thing necessary to make it undoubted and effectual, on the supposition that she retained her mental faculties. On the other hand, if her faculties were impaired, she was not in a proper condition to make such a gift, and if so, it ought not to be sustained. This, I think, is the safe conclusion to arrive at, even from the solitary testimony of Miss Westerlo herself. But when we consider that at this time Mrs. Clinton was laboring under an attack of paralysis, which always more or less impairs the mind; that it was with great difficulty she could articulate, being in the habit of calling things and persons by the wrong name; that she was, in short, extremely ill; and, according to the testimony of Mrs. Jones, De Witt Clinton Jones and Mr. De Witt, that Miss Westerlo herself doubted whether Mrs. Clinton intended to make a gift of the certificate, I have little hesitation in saying that the referee was not warranted in his conclusion, that Mrs. Clinton did intend to make a gift of it.

If this view of the case should prevail, it is unnecessary to consider the other questions presented to us.

The judgment should be reversed; a new trial ordered, costs to abide the event.

INGRAHAM, J. concurred.

LEONARD, J. (dissenting.) The main question in this case is whether there was a valid *donatio causa mortis* made by Mrs. Clinton to Miss Westerlo.

1st. As to the subject of the gift, and whether transferable by mere delivery. It consisted of a certificate of deposit, payable to Mrs. Clinton, her special attorney, representatives or assigns.

In the following cases, bonds and mortgages have been held to be well transferred by delivery only, as a gift *causa mortis.* (*Duffield* v. *Elwes,* 1 *Bligh, N. S.* 497. *Hurst* v. *Beach,* 5 *Madd, Ch. R.* 351. *Duffield* v. *Hicks,* 1 *Dow & Clark's Rep. N. S.* 1.)

The promissory note of a third person, not payable to bearer, not so indorsed as to transfer the legal title, also secured by a mortgage, has, together with the mortgage, been held to be the subject of a valid gift *causa mortis.* (*Brown* v. *Brown,* 18 *Conn. R.* 410.)

These authorities seem quite sufficient to warrant the conclusion that the gift in question may be valid notwithstanding there was no transfer of the certificate in writing, signed by the donor.

2d. Was there an actual delivery of the certificate *donatio causa mortis ?*

On this point the referee has found in favor of the plaintiff. The only grounds for doubt here, arise from the request of Mrs. Clinton, after declaring that she gave the contents of a certain package to Miss Westerlo, then handed to her, including the certificate, that Miss Westerlo should put the package in the pocket of her silk dress as a safe place for keeping it; and also because Miss Westerlo stated that she was certain Mrs. Clinton intended to give her the money, but was not positive as to the certificate.

The observation of Mrs. Cinton did not manifest an intent to impose a condition on her gift, or to withhold actual delivery thereof. It related only to the safety of the package.

The doubt of Miss Westerlo could not have referred to what was said by Mrs. Clinton in making the gift. If her doubts originated there, they would have related also to the money, inasmuch as both the money and the certificate were

given at the same time, by the same declaration of Mrs. Clinton. I think her doubt arose from the form of the certificate, and the want of any writing.

When asking the advice of Mr. De Witt, she exhibited the certificate and stated the facts. There was nothing to give rise to any other doubt. The advice of Mr. De Witt, that the title of Miss Westerlo to the certificate was not good, seems to have been founded on this legal defect in the transfer of the certificate. He informed her that it could only be collected through the executor. In this advice he was, I think, mistaken. It is of no consequence whether the defendant was a lawyer or layman. He obtained possession through a mistake, which he and Miss Westerlo both made in respect to her rights. He has collected the money, and the gift being valid, he is liable to refund it.

The transfer of this claim to the plaintiff, from Miss Westerlo, is valid, and vests the right to collect it in the plaintiff.

The judgment should be affirmed with costs.

Judgment reversed, and new trial granted.

[New York General Term, September 16 1861. *Clerke, Ingraham* and *Leonard,* Justices.]