[S. F. No. 2375.    Department One.—January 7, 1903.]

MARIA T. ROGERS, Respondent, v. MANHATTAN LIFE
INSURANCE COMPANY OF NEW YORK, Appellant.

LIFE INSURANCE—ACTION UPON POLICY—PROOF OF DEATH—SUICIDE—
CIRCUMSTANTIAL EVIDENCE—QUESTION FOR JURY.—In an action
upon a policy of life insurance, where proof of the death of the
insured prior to the date of an annual premium is in issue, it may
be proved by circumstantial evidence short of a demonstration.
Proof of suicide is proof of death, and where the circumstances indi-

cate a suicide it is a question of fact for the determination of the jury.

Id.—Evidence—Circumstances Indicating Suicide—Letters Expressing Intention—Res Gestæ.—Where the proof of death, in such action, consisted of circumstantial evidence, indicating the suicide of the deceased in disappearing from a steamer at night, leaving his coat and hat and valise, and a letter to the captain in his stateroom expressing his intention to go over the side of the steamer, and so get rid of the trials and troubles of life and avoid a funeral, such letter is admissible in evidence as part of the *res gestæ,* and is not objectionable on the ground that it is self-serving.

Id.—Instructions—Improper Requests.—Instructions requested by the defendant which assumed facts in dispute, or which were not germane to the evidence, were properly refused.

Id.—Interest—Proofs of Death.—Where the policy was payable upon the receipt of satisfactory proofs of death, and no waiver appears of the proofs of death, and the fact of death was not admitted but disputed, interest can only be allowed from the time of the making of such proofs.

APPEAL from an order of the Superior Court of the City and County of San Francisco. John Hunt, Judge.

The facts are stated in the opinion.

James M. Allen, for Appellant.

The burden was on the plaintiff to overcome the presumption that the insured remained alive, and such burden is not sustained by the evidence. (Code Civ. Proc., sec. 1963, subd. 26; *Ashbury* v. *Sanders,* 8 Cal. 62, 64;[1] *Burr* v. *Sim,* 4 Whart. 150;[2] *Smith* v. *Knowlton,* 11 N. H. 191, 197; *Davie* v. *Briggs,* 97 U. S. 628, 634.) Mere disappearance under suspicious circumstances is insufficient to show death. (*Succession of Vogel,* 16 La. Ann. 139;[3] *Straub* v. *Grand Lodge,* 2 App. Div. 138; 37 N. Y. Supp. 75; *Boyd* v. *New England Life Ins. Co.,* 34 La. Ann. 849; Medico-Legal Papers, 3d series, p. 229; Mysterious Disappearances, 3 Forum, p. 69.) The Rogers letter was inadmissible hearsay, and a self-serving declaration. (*Huth* v. *Huth,* 10 Tex. Civ. App. 184; *Shamp* v. *White,* 106 Cal. 220, 222, 223; *Saenger* v. *Nightingale,* 48 Fed. 708; *Sargent* v. *Beard,* Tex Civ. App.), 53 S. W. Rep. 90, 91.)

---

[1] 68 Am. Dec. 300.　　　　　　[3] 79 Am. Dec. 571.

[2] 33 Am. Dec. 50.

John W. Bourdette, and Van Ness & Redman, for Respondent.

The death may be proved by circumstantial evidence. (*John Hancock Mut. Life Ins. Co.* v. *Moore,* 34 Mich. 41; *Smith* v. *Knowlton,* 11 N. H. 191; *Lancaster* v. *Washington Life Ins. Co.,* 62 Mo. 121; *Tisdale* v. *Connecticut etc. Ins. Co.,* 26 Iowa, 170; [1] *Merritt* v. *Thompson,* 1 Hilt. 550; *Cox* v. *Ellsworth,* 18 Neb. 664; [2] *Boyd* v. *New England Life Ins. Co.,* 34 La. Ann. 848.) The Rogers letter was properly admitted in evidence to prove the character of his death and his intention to commit suicide, and as part of the *res gestæ.* (*Sharland* v. *Washington Life Ins. Co.,* 101 Fed. Rep. 206; Code Civ. Proc., sec. 1850; *Tait* v. *Hall,* 71 Cal. 149; *Kyle* v. *Craig,* 125 Cal. 107; *Lund* v. *Inhabitants of Tyngsborough,* 9 Cush. 43; *Wetmore* v. *Mell,* 1 Ohio St. 26; [3] *Douglass* v. *Chapin,* 26 Conn. 76; *Travelers' Ins. Co.* v. *Mosley,* 8 Wall. 397; *Garber* v. *State,* 4 Cold. 161; *Hadley* v. *Carter,* 8 N. H. 40.) The judgment should allow interest from date of death, the denial of liability being a waiver of proofs of death. (Civ. Code, secs. 1440, 3287, 3302; *Millard* v. *Supreme Council,* 81 Cal. 340; *Phœnix Ins. Co.* v. *Rogers,* 38 N. E. Rep. 865; *Unsell* v. *Hartford etc. Ins. Co.,* 32 Fed. Rep. 443.)

HAYNES, C.—This action is upon a policy of insurance issued by defendant upon the life of Hiram K. Rogers, in the sum of five thousand dollars, payable to his wife, the plaintiff herein, upon his death. The jury returned a verdict for the plaintiff, upon which judgment was entered, and defendant appeals from an order denying its motion for a new trial.

The complaint alleged that Rogers died on June 10, 1897. The answer denied that he died on that day, or at all, and further alleged that the annual premium due on June 14, 1897, had not been paid, and because thereof the policy had become forfeited. The non-payment of the premium being conceded, it was essential for the plaintiff to prove not only the fact of the death of the assured, but that it occurred on or before June 14, 1897.

The grounds upon which appellant's motion for a new trial is based are,—1. Errors of law occurring upon the trial;

[1] 96 Am. Dec. 136.   [3] 59 Am. Dec. 607.
[2] 53 Am. Rep. 827.

2. That the evidence is insufficient to justify the verdict; and 3. That the verdict violates certain instructions given by the court.

Rogers and his wife and one child lived in San Francisco. On June 9, 1897, he bought a ticket for a passage on the coast steamer "Santa Rosa" from San Francisco to Port Harford, and went on board carrying a small valise. The steamer sailed about eleven o'clock A. M. He was given room 36 on the hurricane deck. In the afternoon the captain's steward saw him talking with a visitor in his room, and about six o'clock notified him that dinner was ready, to which he replied that he did not want any. In the evening he was for half or three quarters of an hour in conversation with the captain, with whom, as well as the other officers of the steamer, he was well acquainted, having for several years served as purser on that and other vessels on that line. They separated about nine or half-past nine o'clock that evening, and there is no evidence that Rogers has been seen by any one after that time. The steamer arrived at Port Harford (its first landing), and was tied up to the wharf a little before four o'clock the next morning. The "slow bell" was rung about half an hour before reaching port. Mr. French, the captain's steward, got up when the bell rang, and on his way to the captain's room passed room 36, which had been assigned to Rogers, and found the door open and the electric light burning, and saw Rogers's coat hanging on the wall, and a letter, inclosed in an envelope addressed to Captain Alexander, lying on one of the berths, of which there were three. None of them had been occupied or disturbed. This letter he gave to Captain Alexander at about half-past six or seven o'clock; that he opened and read the letter, and then went to Rogers's room, and found therein a valise, a coat, and a hat; that he opened the valise and found therein some collars and cuffs, but no "outside clothes, no suit of clothes, drawers, vest, or coat"; that the coat was hanging on a hook, and the hat was a stiff derby. The evidence tended strongly to show that Rogers did not leave the steamer by passing down the gang-plank at Port Harford, or any of the other ports at which landings were afterwards made, as he was well known to the officers in charge, and would have been almost certainly recognized. There was evidence tending to show that he might have reached the

wharf over the rail, or by one of the ports, but this evidence need not be further noticed at present.

The letter found in Mr. Rogers's room was offered and received in evidence over the objection of the defendant that it was incompetent, irrelevant, and immaterial; that it was self-serving; that it furnished no evidence of his death; that it was merely his own declaration, and not part of the *res gestæ.* Said objections were overruled, and defendant excepted. Said letter reads as follows:—

"June 9, 1897.

"Captain E. Alexander:—

"Dear Sir: Since leaving the city it occurred to me that it would be so easy to go over the side and get rid of all the trials and troubles of life that I concluded to do so and so avoid a funeral. My reasons are so numerous that it is useless to enter into them, and I will only say that I have come to the conclusion that life is not worth living, and it is not either finances or insanity. With an apology for having come on your steamer, yours truly,         H. K. ROGERS."

Among the disputable presumptions enumerated in section 1963 of the Code of Civil Procedure is the following: "That a person not heard from in seven years is dead" (subd. 26). It is uniformly held that the presumption of death does not arise under that provision until the expiration of the time stated, "unless," as was said in *Burr* v. *Sim,* 4 Whart. 150,[1] "there are circumstances in evidence to quicken the time." As to what circumstances will "quicken the time" so as to raise the presumption of death before the expiration of the statutory period no specific statement can be made that will apply to all cases. Appellant contends, however, that such circumstances must show that the person "unheard from" was subject to some specific peril, as a plague, a battle, an earthquake, or shipwreck, or had some dangerous disease. Appellant's argument concedes that the presumption of the continuance of life may cease within the statutory period in the absence of direct proof of the fact of death, and therefore the presumption may be rebutted by any circumstance or combination of circumstances that may render death more

[1] 33 Am. Dec. 50.

probable than the continuance of life. The principal circumstances connected with Rogers's leaving San Francisco, and the occurrences on the steamer until about half-past nine o'clock, when he and the captain separated, have been briefly stated, and the question now presented is whether the court erred in receiving in evidence said letter written by him to Captain Alexander.

Appellant's principal contention is, that it was not part of the *res gestæ,* and was self-serving. It is argued that the principal fact in issue was the *death* of Rogers, and hence it could be no part of the *res gestæ.* Conceding the death of Rogers to be the principal fact in issue, if he committed suicide he died; and proof of suicide would be proof of death. But evidence short of demonstration may be sufficient to establish a fact. It was shown by the evidence that Rogers left his home on the ninth day of June; that he packed his valise, and told his wife that he was going to Los Angeles to obtain employment; he bought a ticket to Port Harford, and boarded the steamer "Santa Rosa"; that he was assigned to stateroom No. 36; that he was well acquainted with the captain and other officers of the boat, having for several years been purser thereon; that Mr. Downing, the purser, visited him in his room upon the steamer; that he spent half or three quarters of an hour in the evening with the captain, separating about nine o'clock in the evening, and there is no evidence that he has since been seen or heard of, either alive or dead. No pretense is made of direct proof of his death, but the contention is, that his disappearance was attended by such circumstances as justify the conclusion that he died at the time alleged. These facts preceding the letter in question were properly received in evidence as part of the *res gestæ,* or "transaction," or "things done" (Bouvier's Law Dictionary), in connection with the disappearance, which the plaintiff claims were coincident with the death of Rogers. The last act of Rogers of which there is direct proof was the writing of said letter and his disappearance from the "Santa Rosa," and these acts were part of the *res gestæ.* When it is necessary in the course of a cause to inquire into the nature of a particular act, or the intention of the person who did the act, proof of what the person said at the time of doing it is admissible evidence as a part of the *res gestæ* for the pur-

pose of showing its true character.   (2 Starkie on Evidence, 241; 1 Phillips on Evidence, 4th Am. ed. 185.)

In *Insurance Company* v. *Mosley,* 8 Wall. 397, 404, it is said: "Wherever the bodily or mental feelings of an individual are material to be proved, the usual expression of such feelings are original and competent evidence. Those expressions are the natural reflexes of what it might be impossible to show by other testimony. If there be such other testimony, this may be necessary to set the facts thus developed in their true light, and to give them their proper effect. As independent explanation or corroborative evidence, it is often indispensable to the due administration of justice.   Such declarations are regarded as *verbal acts,* and are as competent as any other testimony, when relevant to the issue.   Their truth or falsity is an inquiry for the jury."

The above passage is quoted in full in the later case of *Mutual Life Ins. Co.* v. *Hillmon,* 145 U. S. 285, 296, a case closely similar to the present, and where the principles involved are clearly stated and numerous authorities cited.   If the intention expressed by Rogers in said letter was in fact executed, the disappearance would be explained and the death proven.   It is contended by appellant, however, that the statements contained in the letter were hearsay and self-serving, and therefore were not admissible in evidence.   That Rogers wrote the letter in question is not disputed, and it is therefore original evidence of his intention and mental feelings. (*Mutual Life Ins. Co.* v. *Hillmon,* 145 U. S. 285, 296.) The matters stated therein did not come to the jury at second-hand.   His written declaration was before them, and the fact that he made said declarations was conclusively shown by competent and original evidence.   The letter and the disappearance were coincident, and "when the act of a party may be given in evidence, his declarations made at the time, and calculated to elucidate and explain the character and quality of the act, and so connected with it as to constitute one transaction, and so as to derive credit from the act itself, are admissible in evidence" (*Lund* v. *Inhabitants of Tyngsborough,* 9 Cush. 36, 42) ; and in the same case it was also said, "Perhaps the most common and largest class of cases in which declarations are admissible is that in which the state of mind or motive with which any

particular act is done is the subject of inquiry." The courts of both New Hampshire and Massachusetts have held declarations of a servant at the time of leaving his master's service to be competent evidence, in actions between third persons, of his reasons for doing so. (*Hadley* v. *Carter,* 8 N. H. 40; *Elmer* v. *Fessenden,* 151 Mass. 359.) The supreme court of Ohio, in *Lake Shore etc. R. R.* v. *Herrick,* 49 Ohio St. 25, held that for the purpose of proving that a person was at a railroad station intending to take passage on a train, previous declarations, made by him at the time of leaving his hotel, were admissible; and in the words of the supreme court of the United States, "The existence of a particular intention in a certain person at a certain time being a material fact to be proved, evidence that he expressed that intention at that time is as direct evidence of the fact as his own testimony that he then had that intention would be." (*Mutual Life Ins. Co.* v. *Hillmon,* 145 U. S. 285.) Said letter being a part of the *res gestæ,* and admissible in evidence as such, cannot be excluded upon the ground that it is self-serving. We cannot consistently say that the letter was properly admitted as part of the *res gestæ,* and at the same time say that the court erred in admitting the same in evidence upon the ground that it was self-serving. There is nothing in *Shamp* v. *White,* 106 Cal. 220, inconsistent with our conclusion. There the letter of defendant was written after the time for the renewal of the lease had expired, and asserted that plaintiff "had been informed of his intention to continue in possession of the leased property," and was therefore a statement of a past occurrence.

In Greenleaf on Evidence (vol. 1, sec. 108), after citing other instances, it is said: "So, also, where a person enters into land in order to take advantage of a forfeiture, to foreclose a mortgage, to defeat a disseisin, or the like, or changes his actual residence or domicile, or is upon a journey, or leaves his home, or returns thither, or remains abroad, or secretes himself, or, in fine, does any other act material to be understood, his declarations made at the time of the transaction, and expressive of its character, motive, or object, are regarded as 'verbal acts, indicating a present purpose and intention,' and are therefore admitted in proof like any other material facts. So, upon an inquiry as to the state of mind, sentiments,

or disposition of a person at any particular period, his declarations and conversations are admissible. They are parts of the *res gestæ.*"

The case of *Matzenbaugh* v. *People,* 194 Ill. 108,[1] decided in December, 1901, is in point. There the proceeding was for the collection of personal property taxes on notes, mortgages, and money, owned by plaintiff and sought to be charged on his real estate. He had lived in that county in Illinois for thirty years, but prior to April 1, 1900, removed to Texas, with the intent, as he claimed, of making that state the place of his permanent residence, and the tax-collector claimed that he had not changed his domicile. Matzenbaugh offered to prove his declarations that his intention in going to Texas was to change his domicile, and this evidence was excluded. Some of these declarations were held on appeal to be too remote, but that others were of the *res gestæ* of the removal. In the opinion the supreme court, after quoting the foregoing passage from Greenleaf on Evidence, said: "Any declarations of appellant which were so connected with the act of going from Illinois to Texas that they should have been regarded as qualifying or characterizing the act, were admissible in evidence as tending to establish the intent which actuated the appellant at the time. The court erred in refusing to permit such declarations to be given in evidence." The difficulty in perceiving the reasons for the admission of such testimony may arise from a failure to discern the precise fact, or main fact, as it is called, to the proof of which it is directed. It is not offered, primarily, to prove the fact of death, but rather to prove one of the circumstances which necessarily precedes a self-inflicted death,—namely, the intention to commit suicide. In every such case, this intention must have been formed at some time preceding the death, and must have continued as an actual state of mind for some appreciable period of time and until the death-stroke was inflicted. While in this mental condition, the person concerned often makes a solemn declaration, orally or in writing, expressing this intention. It is always proper to prove the intention as a fact distinct from the actual death, and distinct from and preceding the perpetration of the act which causes the death. Any act or declaration made while this intention exists, and proceeding from it,

---

[1] 88 Am. St. Rep. 134.

whether expressly declaring the intention, or otherwise naturally tending to prove its existence, is necessarily of the *res gestæ* as to the intent, and the intent is the main fact. As such, it tends directly to prove the intention to commit suicide, which is often, if not always, a necessary part of the proof of the act itself. The court did not err in admitting said letter in evidence.

Appellant further argues that the evidence is insufficient to justify the verdict, in that there is no evidence, direct or indirect, that Rogers is dead; that if there is any evidence of his death, it is merely inferential or circumstantial.

It is true that there is no direct or positive evidence of his death, but such evidence is not essential. The jury were instructed, at the defendant's request, that "while the death of Rogers is not to be presumed from absence alone, it is a circumstance which should be taken into consideration, with other evidence in the case, and the conclusion of life or death arrived at from the whole facts or circumstances, including his continued absence."

The fact of Rogers's death, as well as the time at which it occurred, if it did occur, was a question of fact to be determined by the jury from the evidence. His letter announcing his intention to commit suicide was in itself some evidence of that intention. It is true that he may have had no such intention, but whether he had such intention or not was a question to be solved by the jury. The presumption, in the absence of countervailing circumstances, was, that it truly stated his intention; and if he came to the conclusion that life was not worth living he was face to face with one of the deadliest perils that can beset an unsuccessful and disheartened man. He had served many years as purser, and voluntarily left that employment for the reason that additional duties were required of him which he thought should not be imposed upon him, and after leaving that employment, and not succeeding in finding other employment, sought to be reinstated, but failed. He tried the races and other forms of gambling unsuccessfully, and for these purposes spent money which he obtained from his wife. Upon her remonstrance against his gambling he left home, and after an absence of three weeks returned at her solicitation. There is no evidence that he ever gambled before, nor that any controversies arose between him

and his wife except in relation thereto. He was not charged with any criminal offense, and was not a fugitive from justice. These circumstances tend to show that he did not abandon his wife and child to live apart from them in some unknown place, but they are consistent with, and render probable, the purpose of committing suicide expressed in his letter. From the date of his disappearance to the time of the trial about four years elapsed. There was no criminal act or prosecution hanging over him to prevent his return, and no apparent reason for his continued absence and failure to communicate with his wife and friends if he did not commit suicide. It is argued, however, that he may have reached the wharf over the rail, or in some way reached the shore, and that the writing of the letter and his disappearance were for the purpose of enabling his wife to collect the insurance money. This may be true. But it is also true that many suicides leave written statements of their intention to destroy their own lives. It also appeared in evidence that defendant employed a detective, who sent a circular containing a picture of Rogers, with and without a beard, to the states and territories, and to the various officers throughout the state, and the post-offices, and had them posted up throughout this state, Arizona, Washington, Oregon, and, he thought, in Montana and Idaho also, and offering a reward of one hundred dollars for information that would lead to the ascertainment of his whereabouts, and that his efforts were unsuccessful.

We think the evidence is sufficient to sustain the verdict, and find none that would require the opposite conclusion, and such seems to have been the opinion of the learned judge who tried the cause, heard all the evidence, and denied the defendant's motion for a new trial, from which this appeal was taken.

Nor do we think the court erred in refusing to give the sixth, tenth, or eleventh instructions requested by the defendant. The sixth assumed as a fact that Rogers took with him upon the steamer a basket valise, and that it was not found in his stateroom. There was some conflict in the evidence as to whether he took upon the steamer one or two valises. The testimony of the captain's steward that he brought on the steamer but one, which the witness received from him at the head of the gang-plank, was quite positive. There was some

evidence that he approached the vessel with two ladies, and that he then carried a basket valise, but it was not shown that it was his; while the steward testified that he received but one valise, and took that to Rogers's stateroom. The instruction, therefore, assumed as a fact that which was at least disputed.

The tenth and eleventh instructions requested by defendant assumed that, to take the case out of the presumption of life for seven years, there must be evidence to show that at some particular time or date Rogers was in contact with some specific peril, and that the perils of the sea are general and contingent, and that no violent probability of death arises from a peril which, though possible, is remote. These instructions were not based upon any evidence which could justify them. There was no suggestion in the evidence of any peril of the character therein specified, nor do we find any error in the instructions which were given.

The plaintiff appealed from that part of the judgment which limited the computation of interest to commence from the date of the proofs of death, which were made on January 31, 1899, while the death occurred on or prior to June 14, 1897. The policy recited that the defendant insured the life of Hiram K. Rogers, "and will pay at its office in the city of New York, to Maria T. Rogers, his wife, her executors, administrators, or assigns, five thousand dollars, upon satisfactory proof at its office of the death of the insured during the continuance of this policy." It is contended that this condition of the policy was waived by the defendant in "that at all times subsequent to the death of said Hiram K. Rogers, the defendant herein has disclaimed and denied any and all liability to the plaintiff for said sum of five thousand dollars, or any part thereof, upon the alleged ground that said Hiram K. Rogers was not dead, and notified the plaintiff that it would not, upon that ground, pay said sum or any part thereof."

Defendant's failure to deny this allegation could not be taken as an admission of Rogers's death, or as a waiver of proof thereof; on the contrary, the allegation was an admission by the plaintiff that defendant constantly insisted that Rogers was not dead, and therefore could not be construed to be a waiver of proof of his death. If the insurance company had admitted the death of the insured, but contended upon some other ground that it was exonerated from liability, the

admission of the death might be held to be a waiver of proof of the fact; but upon the face of the policy no cause of action accrued until proofs of the death were made or the fact of the death was admitted. The court below did not err in holding that interest did not accrue prior to the presentation of proofs of the death required by the policy.

I advise that the order denying defendant's motion for a new trial be affirmed, and that the judgment appealed from by plaintiff refusing interest prior to the date of formal proofs of death be also affirmed.

Gray, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the order denying defendant's motion for a new trial is affirmed, and the judgment denying interest prior to the date of proofs of the death is also affirmed.

Shaw, J., Angellotti, J., Van Dyke, J.