[No. 12606.   Department One.   September 1, 1915.]

FLORETTA KLEIN, *Appellant*, v. KNIGHTS AND LADIES
OF SECURITY, *Respondent*.[1]

INSURANCE—ACTION ON POLICY—SUICIDE—EVIDENCE — ADMISSIBILITY. In an action upon a life insurance policy, upon an issue as to whether the insured committed suicide, evidence of his statements as to his intentions to do so are competent.

SAME — ACTION ON POLICY — SUICIDE — EVIDENCE — QUESTION FOR JURY. In an action upon a life insurance policy, upon an issue as to whether the insured committed suicide, the presumption of death from natural causes by reason of the fact that he was found dead in bed, is sufficiently overcome to make a question for the jury, where it appears that the insured had repeatedly stated that he intended to commit suicide and so informed witnesses the day before his death, stating that he had the stuff in his pocket to do it with, and that he left notes bidding his family good-by and stating where they would find some money.

'Reported in 151 Pac. 241.

Appeal by plaintiff from a judgment of the superior court for Spokane county, Webster, J., entered June 15, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action upon an insurance policy. Affirmed.

*A. C. Shaw,* for appellant.

*Roche & Onstine,* for respondent.

Mount, J.—This action was brought to recover upon an insurance policy. The case was tried to the court and a jury. A verdict was returned in favor of the plaintiff for $152. The defense was based upon an allegation that the decedent came to his death by suicide. When the case was first at issue, the trial court granted to the plaintiff a judgment upon the pleadings. That judgment upon appeal to this court was reversed and the cause remanded for trial upon the issue of fact raised by the pleadings. *Klein v. Knights & Ladies of Security,* 79 Wash. 173, 140 Pac. 72. When the case went back for trial, it was stipulated by counsel:

"That the sole issue in this cause for determination by the jury is the question of whether or not the deceased, Gustav A. Klein came to his death by his own hands, or, in other words, committed suicide, and that all other questions have been proved or waived by the respective sides. It is also stipulated that in the event the verdict should be in favor of the plaintiff, the amount to which she would be entitled is $948; that in the event the verdict should be that the deceased did commit suicide, that the amount of the verdict will be $152."

At the close of the defendant's evidence, the plaintiff moved for a directed verdict upon the ground that the evidence was inadmissible and insufficient to support a finding that the deceased met his death by his own hand. The court denied this motion. The jury returned a verdict in favor of the plaintiff for $152. Motions for judgment notwithstanding the verdict and for a new trial were denied, and a judgment was entered upon the verdict. The plaintiff has appealed.

The appellant now insists that the trial court erred in denying her motion for a directed verdict. It is argued, in substance, that, when the deceased was found dead in his bed, the presumption of death from natural causes must obtain. We have no doubt that, where there are no other facts of circumstances, the presumption of natural death would obtain. But the real question here is whether the facts and circumstances proven by the defendant were sufficient to go to the jury to overcome that presumption. A number of witnesses testified, in substance, to the fact that the deceased was of a suicidal disposition; that he had repeatedly talked his affairs over with friends and neighbors, and had told them that he intended to commit suicide. He was constantly complaining that his home life was unbearable, and that the only way to end it was to destroy himself. He stated to the witnesses Piper and Wells, in substance, "that he had the stuff in his pocket with which to do it, that he did not intend to do a poor or bungling job, that when he did do it he would do it right." These statements were made by the deceased to these witnesses on the day before his death. On the same day, he said to another witness, in substance, that he had been invited by his sister to have dinner with her on the following Sunday, but that he had refused "because he would not be here then." He stated to different witnesses that his life was unbearable, and that he intended to end it all. On the evening of his death, he attended a lodge of which he was a member, and upon returning to his home, the family being away, he left two notes, one upon the dressing table in his room, and another in the house. The doctor who was called when his body was found testified that he had a conversation with the plaintiff in which it was stated:

"I inquired about this note, and some one I think present, not she, either one of the young people, got this note and showed it to me, which, as I remember, was just two or three lines written with a lead pencil, in an ordinary hand, stating in substance—of course I would not undertake to remember

the words, but in substance that he was tired of living, and he bid them good-bye, and he hoped their children would be well cared for, and that they would find some money, I have forgotten whether the amount was stated or not, in a certain drawer. That is all there was to the note. Q. Did you ask her who wrote the note? A. I asked her if that was his handwriting, and she said it was."

Another witness testified in substance to the same effect, except that he stated there were two notes. These notes were not offered in evidence because it appears that they had been lost. The money was found at the place stated.

We think this evidence was competent to go to the jury, and that it was for the jury to say, under all the circumstances, whether the defendant died a natural death, or whether he committed suicide. The rule is stated in 7 Ency. Evidence, p. 566, as follows:

"The recent declarations of an insured person tending to show an intent or impulse to commit suicide have been received in evidence against the beneficiary."

In *Rogers v. Manhattan Life Ins. Co.*, 138 Cal. 285, 71 Pac. 348, the headnote reads as follows:

"In an action upon a policy of life insurance, where proof of the death of the insured prior to the date of an annual premium is in issue, it may be proved by circumstantial evidence short of demonstration. Proof of suicide is proof of death, and where the circumstances indicate a suicide, it is a question of fact for the determination of the jury."

In *Weld v. Mutual Life Ins. Co.*, 61 Ill. App. 187, the court said:

"The written statement found upon the body of the deceased, addressed to 'Father, mother, and sisters,' was properly admitted in evidence. It was not signed, but was written upon a page of a book found on the person of the deceased, and was clearly a message prepared by him for the purpose of announcing to his relatives that his death was caused by his own hand, and of making disposition of his effects and indicating his desire as to the funeral services to be held over his remains."

In *Hale v. Life Indemnity & Inv. Co.*, 65 Minn. 548, 68 N. W. 182, the court, speaking to this point, said:

"It is true that, when the question is whether a person did a certain act, his declarations, oral or written, made prior to and about the time he is alleged to have done the act, to the effect that he intended to do it, are admissible as original evidence, if made under circumstances precluding any suspicion or misrepresentation. *Mutual Life Ins. Co. v. Hillmon*, 145 U. S. 285, 12 Sup. Ct. 909; *Commonwealth v. Trefethen*, 157 Mass. 180, 31 N. E. 961. The rule rests upon the basis that where the inquiry is whether a party did an alleged act,—for example, committed suicide,—and there is evidence in the case tending to show that in fact he did do the act, proof that he had formed a previous intention to do it is material and competent, as tending to corroborate such evidence and support the theory of suicide. Such intention is a fact to be proven, and may be established by the declarations of the party made at or about the time it is claimed the act was done. The cases cited fully sustain the rule, and illustrate its limitations. The declarations must, in order to be admissible in evidence, bear a reasonably close relation, in point of time, to the alleged act. The reason for the rule suggests and enforces the necessity of this relation between the declaration of the party, and the doing of the alleged act by him. They must be so near in point of time as to justify a reasonable probability, in connection with the other evidence in the case, that the party in fact carried his declared intention into execution. No definite rule applicable to all cases can be laid down as to when, and when not, such declarations will be received. It is a matter largely in the sound discretion of the trial court in each particular case."

We think this is a correct enunciation of the rule. It was proven in this case very clearly that, on the day before the assured died, he had made declarations to the effect that he intended to commit suicide. Upon several previous occasions he had made declarations to the same effect, stating, in substance, that he had the stuff in his pocket with which to do it, and when he did it, it would be no bungling job. The notes which he left in the house prior to his death written by him, indicate clearly that he was about to commit suicide. We are

satisfied that, under these circumstances, the question was a proper one for the jury, and the court therefore did not err in refusing to grant a nonsuit.

The judgment must therefore be affirmed.

MORRIS, C. J., MAIN, HOLCOMB, and CHADWICK, JJ., concur.