## PIZILLIO v. LINCOLN FIRE INS. CO. OF NEW YORK.

### No. 1217.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1933.

St. Clair Adams and St. Clair Adams, Jr., both of New Orleans, for appellant.

C. G. Spaht and Moise Thibodeaux, both of Baton Rouge, for appellee.

MOUTON, Judge.

This case was consolidated with the suit by plaintiff against the City of New York Insurance Company for trial for the recovery of two insurance policies issued on the equipment of a meat market situated near the city of Baton Rouge.

In this opinion, we will dispose of the demand of the plaintiff on the policy issued by the above-named Lincoln Insurance Company of New York.

In another opinion, Pizillio v. City of New York Ins. Co., 150 So. 106, we shall dispose of the suit on the policy issued by the City of New York Insurance Company.

In this case, the policy was issued on the 12th day of June, 1931. The amount of the policy was $350 and provided for insurance against loss from June 12, 1931, to June 12,

1934. The property insured was destroyed by fire on the 11th day of May, 1932, during the life of the policy.

There are two defenses urged by defendant company against the demand of plaintiff on the policy issued by defendant company herein.

In its answer, defendant, in urging its first defense, refers to the following provision of the policy contract: "This entire policy, unless otherwise provided by agreement herein or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance whether valid or not on property covered in whole or in part by this policy."

This policy was issued, as alleged in the answer, for the amount above stated on June 12, 1931, against loss by fire on "furniture, fixtures and equipment usual and incidental to the operation of a meat market."

Defendant company then alleges that thereafter on April 28, 1932, plaintiff obtained the issuance of a policy of insurance in the City of New York Insurance Company in the sum of $300, "covering all equipment usual to a meat market and that the property covered by both insurance policies was located in the same premises and was identical in every respect."

These allegations are rather general, but as the averment is that the property was identical, we understand the allegation to be that the effects or articles insured under the first policy were the same which were insured in the second policy. The evidence shows that when plaintiff took out the policy with the Lincoln Insurance Company in June, 1931, the equipments in his meat market which were covered by that policy consisted of a refrigerator, machine, case-counter, meat bench, electric fan, etc. In this contract of insurance, however, these articles on which the policy was issued were not named or specified, but were merely referred to as fixtures or equipment usual and incidental in the operation of a meat market. It is, however, unquestionably true that the articles above named were the only equipment plaintiff had in his meat market at that time and that they were the effects which were insured under the policy issued June 12, 1931. This policy was issued by Mr. Eastland, agent of the Lincoln Insurance Company of New York.

After this policy had been issued, plaintiff, in July, 1931, bought two machines for his meat market, one designated as a Hobart meat grinder, and the other, a Jim Vaughn meat-cutting machine. This purchase was made from Mr. J. B. Hope. Plaintiff also bought scales and a cash register after the first policy was issued.

Plaintiff testifies that as he desired to get new insurance on those articles he had acquired from Mr. Hope, and others after he had obtained his first insurance from the Lincoln Insurance Company, he applied to Mr. Eastland for new insurance thereon. That he called on Mr. Eastland several times for this new insurance, who failed to respond, and that after considerable delay, he saw Mr. McClelland, agent of the City of New York Insurance Company, who came to his shop to see about the desired insurance.

Plaintiff testifies that he pointed out to Mr. McClelland the Jim Vaughn cutting machine, the Hobart mill, the cash register, and scales which he had bought since he obtained his first insurance from Mr. Eastland, and told him that those articles had not been insured. He says that Mr. McClelland saw these articles on which he wanted the insurance and that about three days thereafter he received the policy of insurance covering these effects from Mr. McClelland, through the mails. He testifies that Mr. Sullivan was in his place of business at that time, who was called as a witness for plaintiff in the case.

Mr. Sullivan testifies that Mr. McClelland came in and said he understood that plaintiff wanted some additional insurance. He says plaintiff told Mr. McClelland that he had applied several times to Mr. Eastland for this additional insurance but that he had not taken the insurance. Mr. Sullivan said, to use his own words, that "Sam pointed out several machines and told him about the Jim Vaughn, Hobart Mill and other items"; that Mr. McClelland then asked him how much insurance he wanted, Sam said "what you will give me," and that Mr. McClelland said "about $300.00," and left.

Mr. McClelland says that plaintiff never told him that he had purchased property since he had given his first insurance and that he had never heard anything about the Jim Vaughn or Hobart machine until the morning he gave his testimony. He says also that he did not see Mr. Sullivan when he had the conversation with plaintiff that led to the issuance of the policy by the City of New York Insurance Company.

The policy issued by Mr. McClelland for that company says, in reference to the things insured, as follows:

"One meat market equipment, including scales, meat choppers, sausage grinders, etc."

The machine designated by the name of meat chopper in the contract of insurance issued by Mr. McClelland is the Jim Vaughn, and the other described therein as the sausage grinder is the Hobart mill, referred to in the testimony.

Why should these machines be so designated in the policy, unless they had been pointed out by plaintiff to Mr. McClelland as the articles upon which plaintiff desired to have new insurance?

It will be noted that the contract of insurance of the City of New York Insurance Company says, also: "Including scales." As it is shown that the scales were bought after the issuance of the first policy, their inclusion in the second policy shows that they had been mentioned by plaintiff when Mr. McClelland agreed to issue that policy.

■ The preponderance of the evidence clearly shows that the second policy was issued on the articles purchased after the issuance of the first policy, above referred to, and that this second policy was not issued on the articles covered by the first policy and covered only the effects bought after the issuance of the first policy and was intended to be restricted thereto.

We therefore find that the policy issued by the City of New York Insurance Company was not taken on "property covered in whole or in part by the policy" issued by the Lincoln Insurance Company, and that there was therefore no violation of the stipulation, condition, or warranty of that policy, hereinabove reproduced.

We now take up the second defense of defendant company presented in the answer of the company, which first refers to the following stipulation in the contract of insurance, to wit:

"This entire policy; unless otherwise provided by agreement endorsed hereon or added thereto, shall be void if * * * or if the subject of insurance on personal property and be or become encumbered by a chattel mortgage."

The equipment of the meat market on which the policy was issued consisted of a frigidaire, electric fan, case-counter, meat blocks, saws, etc.

In order that we may see if the foregoing stipulation of the policy was violated, it is necessary to ascertain whether there was a chattel mortgage on the articles insured thereunder at the time of the issuance of the policy or that these articles, constituting the equipment of the meat market, were subsequently incumbered by a chattel mortgage.

In its answer, in referring to the stipulation of the policy above referred to, defendant avers, "that plaintiff violated said representation, warranty and condition in the respect as hereinafter more specifically set forth," and then in article 7 of the answer, continuing, defendant alleges: "That a portion of the personal property covered against loss by fire under said policy is more specifically described as follows, towit: One Hobart meat grinder; one Jim Vaughn meat-cutting machine.

"One Frigidaire and all incidental equipment was incumbered by chattel mortgages at the time of the issuance of said policy contract."

The policy was issued on the equipment to which we have referred to on the 12th of June, 1931.

The record shows, and without any contradiction whatsoever, that this Hobart meat grinder and the Jim Vaughn meat-cutting machine referred to in defendant's answer were sold by Mr. J. B. Hope to plaintiff in the month of July, 1931; and that a chattel mortgage was given by plaintiff to Mr. J. B. Hope, vendor, on July 27, 1931, to secure the purchase price of those machines which was to be paid by installments.

It is therefore obvious that the mortgage was not in existence when the policy was issued and that it could not possibly incumber at that time the personal property covered by the policy in violation of the stipulation above referred to.

■ The chattel mortgage given by plaintiff to Mr. Hope relates exclusively to the Hobart meat grinder and to the Jim Vaughn cutting machine, and hence it cannot be said that the equipment covered by the policy "had become encumbered by this chattel mortgage," in violation of the warranty, representation, or condition defendant claims by virtue of the stipulation in the contract of insurance above reproduced.

In the answer, in connection with the contention that the mortgage was granted on the machines, above named, the defendant avers that "a Frigidaire and all incidental equipment" were also affected by the mortgage. The mortgage nowhere refers to a Frigidaire or to any incidental equipment, is not granted at all on any such article or effects, and hence there is no ground to support that contention.

There was no violation of the policy by the granting of this mortgage by plaintiff and there is therefore no merit in the second defense urged by defendant in this case.

In the case of Parker v. State Assurance Co., 6 La. App. 163, in passing on the same issue here presented, we held that the clause or stipulation in an insurance policy prohibiting the incumbrance had reference to the property which was being insured by the company, and was not intended as a prohibition to a chattel mortgage given on household effects thereafter acquired.

The same doctrine applies here to the second insurance given on other property, and upon which the mortgage had been granted.

In a case involving similar issues, the Second Court of Appeal reached the same conclusion. See Brooks v. Liverpool & London & Globe Ins. Co. (La. App.) 144 So. 788.

Judgment was correctly given in favor of plaintiff for the amount of the policy.

Affirmed.