[Civ. No. 5051.   Third Appellate District.—February 26, 1935.]

JOHN JACOBS et al., Respondents, v. THE FARMERS' MUTUAL FIRE INSURANCE COMPANY OF TURLOCK, INC. (a Corporation), Appellant.

Percy V. Long, Bert W. Levit and Samuel V. Cornell for Appellant.

Albert Pickard and Francis McCarty for Respondents.

THOMPSON, J.—The defendant has appealed from a judgment for damages which was rendered against it in a suit on an insurance policy for loss sustained on account of a fire.

The plaintiffs are brothers. They were joint owners of a small farm at Turlock upon which there was a furnished dwelling house. The property was occupied by their parents. October 25, 1928, the defendant insured the house for $2,500 for a three-year term. The same policy insured the household furniture for the further sum of $1500. September 27, 1929, John Jacobs sold and conveyed his undivided one-

half interest in the real and personal property to his brother Jonathan for the sum of $3,800. In payment of this purchase price, Jonathan executed and delivered to his brother John a promissory note for that sum secured by a trust deed on the real property which is still unpaid. This transfer of interest in the property was subsequently approved by the insurance company. July 26, 1931, the dwelling house and furniture were entirely destroyed by fire. On the morning following the fire, Mr. E. M. Morrow, the secretary and local adjuster of the defendant insurance company, who resides at Turlock, visited the premises and inspected the ruins. He promptly communicated with Mr. W. M. Way, the president of the company, who also has the duty of adjusting losses on account of fires. Mr. Way at once visited the premises and ascertained the fact that the dwelling house and furniture were almost entirely consumed by fire. July 28, 1931, the insurance company was served with a claim for damages for the loss by fire. August 24, 1931, the company was served with a sworn proof of loss in which each item was specifically mentioned and valued. The plaintiffs' claim of loss was rejected. The amount of the claim was not disputed. The company did not demand an arbitration of the claim. This suit upon the policy was commenced February 18, 1932. The defendant filed its answer denying all of the material allegations of the complaint, and affirmatively alleging that the policy was void for the reasons that the insured persons had made false declarations regarding the value of the property and concerning the contents of the building; that the property was burned as a result of the incendiary acts of the plaintiffs; that without the knowledge of the defendant the personal property was encumbered by a chattel mortgage; that without the written consent of the defendant, the plaintiffs subsequently insured the personal property with another insurance company for the additional sum of $3,000 and that the dwelling house was uninhabited at the time of the fire. The cause was tried with a jury which returned a verdict in favor of the plaintiffs in the full amount of the insurance upon both the dwelling house and the contents thereof. A judgment was rendered accordingly. The defendant made a motion for new trial on all the grounds authorized by section 657 of the Code of Civil Procedure, including that of excessive

damages. The motion was denied. The defendant has appealed from the judgment.

The appellant contends that the court erred in refusing to grant a new trial, chiefly because the judgment for damages is excessive since it is for the full amount of the insurance contrary to the terms of the contract which specifically limit the liability to three-fourths of the "actual cash value" of the property. It is also asserted the judgment is not supported by the evidence; that the policy was rendered void by the subsequent mortgaging of the personal property and by securing additional insurance which was subsequently procured on the household equipment; that the amount of the loss was not first determined by arbitration as required by the policy; that interest was erroneously allowed on the principal amount of the judgment, and that the court erred in the admission of evidence and in the instructions which were given to the jury.

■ We are of the opinion the court erred in denying the motion for a new trial for the reason that the award of damages is excessive, and it is necessary to reverse the judgment on that account. The insurance policy specifically provides: "This company will not be liable beyond the three-quarters actual cash value of the interest of the insured in the property at the time of loss."

The highest cash value of the dwelling house was testified to by the plaintiff, John Jacobs, as follows: "What, in your opinion, was the actual cash value of that building on July 26th, 1931? A. If you ask me that question, I would say exactly $3100.00."

The plaintiff Jonathan Jacobs testified that the actual cash value of the building at the time of the fire was $2,500. Mr. Russell, who was called in behalf of the plaintiffs, testified that it was then worth $2,750. There is substantial evidence to indicate that it was worth much less than $2,500. There is a serious conflict of evidence on that subject. We are unable to ascertain from the record the actual cash value of the dwelling house or furniture, at the time of the fire, with any degree of satisfaction. The limitation of liability fixed by the policy is but three-fourths of the actual cash value of the property at the time of the fire. The court erroneously instructed the jury that "The measure of plaintiff's recovery is the (entire) cash value of the property de-

stroyed''. The judgment is excessive. It is therefore necessary to reverse the judgment on that account.

For the aid of the court upon a retrial of the cause we deem it advisable to determine the law with respect to the other controverted issues in the case.

■ It was not necessary to submit the question of the amount of damages sustained to arbitration as a necessary prerequisite to maintaining this action on the policy for the reason that there was no dispute regarding the amount of the loss of property. The policy provides that: ''If . . . there is a failure of the parties to agree *upon the amount* of such damage or loss they shall submit the question of the amount of such loss to arbitration, and in that event the president of the company shall appoint one disinterested person to act as an arbitrator, and the claimant or insured shall appoint another, . . . '' The plaintiffs filed with the insurance company their sworn proof of loss within thirty days of the time of the fire as required by the policy. They itemized the property which was destroyed and fixed their estimate of the value of each item. This claim contained no demand for damages for other property subsequently sought to be separately insured. They claimed damages for the full amount of their insurance with the defendant on account of a total loss of the property. Two of the agents of the company visited the premises immediately after the fire occurred and should be charged with knowledge of a total loss of the property. The defendant made no reply to the demand of the plaintiffs. The amount of damages claimed by the plaintiffs was not disputed. No demand for an arbitration of the amount of the claim was made by the defendant. No offer for a compromise was suggested. On the contrary the entire claim was rejected. The defendant repudiated its obligation by asserting that the policy was rendered void for the alleged reasons that the plaintiffs fraudulently represented the values of the insured property, and because they subsquently mortgaged the personal property, secured additional duplicate insurance on the personal property and wilfully burned the property to procure the insurance. This constitutes a waiver, on the part of the insurance company, of the provision of the policy with respect to arbitration. (*Farnun* v. *Phoenix Ins. Co.*, 83 Cal. 246 [23 Pac. 869, 17 Am. St. Rep. 233] ; 7 Cooley's Briefs

on Ins., 2d ed., p. 6219.) In the Farnun case above cited the syllabus correctly announces the rule in that regard which was determined by the court, as follows:

"When the policy provides for an arbitration of the amount of loss *in case of a failure of parties to agree,* no arbitration is contemplated or required, except in that event; and if upon presentation of the proofs of loss by the assured the insurance company did not object to the amount or to the proofs, but denied its liability on other grounds, claiming that the policy did not exist and that it had been canceled before the loss for non-payment of premium, this is sufficient evidence that the company acquiesced in the amount of the loss claimed, and thereby waived its right to have it determined by arbitration."

Moreover the defendant waived the defense of failure on the part of the plaintiffs to submit their loss to arbitration by neglecting to either specifically allege or prove a lack of arbitration. (26 C. J., p. 502, sec. 706.) The plaintiffs did allege that they had complied with all the provisions of the policy on their part. The answer merely denied generally that the plaintiffs had complied with all the provisions of the contract. So far as the evidence in this case is concerned the arbitration may have actually occurred. The text of the authority last cited asserts in that regard:

"Noncompliance with a condition of the policy making appraisal or arbitration of the amount of the loss a condition precedent to an action on the policy cannot be taken advantage of under the general issue or a general denial; it must be specially pleaded."

It will be observed that the policy in this case does not absolutely require arbitration as a condition precedent to the maintenance of an action. It is only *when there is a dispute* between the parties regarding the amount of the damages sustained that arbitration is required. The case of *Old Saucelito Land & Dry Dock Co.* v. *Commercial Union Assur. Co.,* 66 Cal. 253 [5 Pac. 232], relied on by the defendants, may be readily distinguished from the principle above announced. In the case last mentioned, the complaint specifically alleged "that a difference arose as to the amount of loss". In that event an arbitration did become a condition precedent to the maintenance of the action. The court quite properly held in that case that the

failure to arbitrate the amount of the disputed loss was a bar to the action. In the present case no such dispute was alleged or proved. The failure to arbitrate the amount of the loss was therefore not a bar to this action.

■ It neither appears from the evidence that the personal property was encumbered by a chattel mortgage at the time of the fire, nor that the policy is void on that account. The contract merely provides that: "This company shall not be liable for loss or damage to any property insured hereunder *while encumbered by a chattel mortgage.*" It does appear without conflict of evidence that the plaintiff John Jacobs sold and assigned his interest in the real and personal property to his brother Jonathan on September 27, 1929, in consideration of the sum of $3,800, for which amount he gave his promissory note. On the same date the conveyance was approved by the insurance company and the policy was assigned to Jonathan. The only evidence that the personal property was ever covered by a chattel mortgage is the testimony of Jonathan Jacobs, as follows: "Q. Did you give your brother a mortgage on anything? . . . A. I gave a mortgage for my brother, whatever they had. . . . Q. The furniture included? A. From 1925 to 1929, yes sir. Q. The mortgage on the furniture, you didn't put in writing did you? A. Mr. Cornell, that is my brother's fault, because when he took the deed with Mr. Wilcox, just he put in there so much mortgage, I didn't know he don't put (in) the furniture."

From the foregoing evidence, it seems apparent that the personal property was not mortgaged. The witness evidently had the impression that the trust deed on the real property would also cover the personal property. But it did not cover the personal property. No chattel mortgage was ever executed, regardless of the intention of Jonathan in that regard. Assuming, without so deciding, that the personal property was mortgaged, the undisputed evidence is that it was only mortgaged "from 1925 to 1929". It follows that at the time of the fire on July 26, 1931, no chattel mortgage existed on the property. This is not a violation of the contract which provides merely that the company shall not be liable "*while* (the property) *is encumbered by a chattel mortgage.*"

It is not necessary for this court to determine whether a chattel mortgage which is not reduced to writing in the form provided by section 2956 of the Civil Code is valid between the parties pursuant to section 2973 of the Civil Code. For the same reason it was harmless for the court to have instructed the jury that ''A chattel mortgage is an instrument *in writing*,'' etc. It may, however, be suggested that section 2956 of the Civil Code does contemplate that a chattel mortgage shall be in writing in substantially the form therein prescribed. It may also be suggested that under the provisions of section 2973 of the Civil Code, relied upon by the defendant in this case, a chattel mortgage is *''valid between the parties''* to that instrument only when it does not conform to the provisions of the code. In the present case the validity of an alleged verbal chattel mortgage is asserted by a stranger to that instrument.

We are of the opinion the subsequent insurance of two valuable Persian hand-made rugs, one hand-made linen bedspread and certain table linen, on May 7, 1931, at San Francisco, by the Norwich Union Fire Insurance Society, was not a violation of the provisions of the defendant's policy, which declares that it shall become void ''if the insured now has or shall procure any other insurance whether valid or not, on property covered in whole or in part by this policy''. It appears that in May, 1931, the plaintiff, Jonathan Jacobs, who then lived and worked in San Francisco, procured two valuable Persian rugs and certain other valuable hand-made bedspreads in San Francisco. He immediately went to the agent of the Norwich Union Fire Insurance Society at San Francisco to insure them. It seems evident from the testimony of Jonathan that he attempted to insure them separately from the other household goods in the dwelling house at Turlock, although in reply to an inquiry from the agent, he said he was going to send them to his father and mother at Turlock to keep for him. The agent merely told him he would insure them as household goods. It is true that the policy of the Norwich Union Fire Insurance Society for the sum of $3,000 did purport to cover generally ''Household furniture . . . (in dwelling house only) on the following described property, all only while situate (at) Route 4, Box 840, adjoining city limits of Tur-

lock.'' It satisfactorily appears from the evidence that Jonathan did not intend to procure double insurance on any of the personal property. Indeed he testified that he sought only separate insurance on the subsequently purchased rugs and linen. It does not appear that he even knew the Norwich Union policy had been issued to also cover the household goods which were previously kept and insured in the Turlock dwelling house. No agent of the last-mentioned insurance company was called to testify that the insured sought to procure double insurance. It is a well-known principle that the construction of a contract depends on the intention of the parties thereto. All of the circumstances of the case indicate that Jonathan intended to separately insure only the valuable rugs and linen. He insured them immediately after acquiring them in San Francisco; he specified those particular items in his application for insurance; he never made a claim to the defendant insurance company for damages for the loss of those rugs and covers. His proof of loss which was submitted to the defendant company after the fire occurred, specified each item of personal property and the value thereof, for the loss of which damages was claimed in the aggregate sum of $1616. The subsequently insured property was not included therein. No claim was ever made to the defendant company for loss on the rugs and linen. We are of the opinion the defendant's policy was not rendered void for a double insurance on the personal property under the circumstances of this case.

It was harmless for the court to have admitted in evidence over the objection of the defendant, the proof of loss which was filed with the Norwich Union Fire Insurance Society for damages for the burning of the two Persian rugs, the bedspread and linen therein itemized at a total value of $3,750. It is claimed that this proof of loss which was filed with the last-mentioned company is self-serving and prejudicial. It proves no more than the necessary inference which must be drawn from the proof of loss already received in evidence which was filed with defendant insurance company which omitted the rugs, bedspread and linen. The only detrimental effect of the admission of the Norwich Union proof of loss is that plaintiffs were making no claim against the defendant for damages for loss of the last-men-

tioned property. That fact is fully established by the omission of those items from the proof of loss which was previously filed against the defendant and which had already been received in evidence. The admission of that document over the objection of the defendant was therefore not prejudicial.

■ There is no merit in the contention of the defendant that the policy was rendered void for the alleged reason that the insured dwelling house was unoccupied at the time of the fire. The contract provides in that regard: ''The privilege for the within described dwelling to remain vacant or unoccupied is hereby increased to thirty (30) consecutive days.'' The undisputed evidence is that the father and mother of the plaintiffs lived on the premises and continuously occupied the dwelling house, except that for not more than ten days during the hot nights of July they temporarily slept in the tank-house adjacent to the dwelling house. During all that time they lived in and about the dwelling house. To merely sleep in an adjoining tank-house for comfort during certain hot nights under the circumstances of this case does not render the dwelling house vacant or unoccupied. (26 C. J., p. 213, sec. 259.) The authority last cited declares in that regard:

''Whether a dwelling house is occupied or vacant must depend upon the facts of each particular case; . . . In general a dwelling house is occupied when human beings habitually live in it as a place of abode. When it ceases to be used for living purposes or as a customary place of human habitation it is unoccupied. It is not necessary that some person shall live in the house continuously, but it must be a usual place of abode, and there must not be a cessation of occupancy for any considerable length of time.''

In the present case the policy specifically authorized a vacancy of the dwelling house for a period of thirty days. The policy was not violated in that regard.

■ When the evidence shows a total loss of the property insured, and a compliance with all of the terms of the policy on the part of an insured person, except such as have been waived by the insurance company, interest is properly included on the amount of the obligation due under the terms of the policy, from the date when the loss is payable.

The mere unwarranted denial of the validity of the contract on the part of the insurance company will not have the effect of defeating the right to recover interest otherwise recoverable under the provisions of section 3287 of the Civil Code. (26 C. J., p. 575, sec. 795; *Rogers* v. *Manhattan Life Ins. Co. of N. Y.*, 138 Cal. 285 [71 Pac. 348].) ▮ In the present case, assuming that there is no dispute regarding the amount of the loss which was sustained, the plaintiffs are entitled to interest on the amount ascertainable under the terms of the policy from the date of the filing of the proof of loss with the insurance company on the theory that it has conceded its obligation to pay three-fourths of the total amount of insurance by failing to dispute the proof of loss. This obligation is imposed in the event that the defendant fails to establish the invalidity of the insurance policy on account of any asserted breach thereof on the part of the plaintiffs.

For the reason that the judgment is excessive it is hereby reversed and the cause is remanded for a new trial.

Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 27, 1935.