### EDWARDS v. COMMONWEALTH MUT. FIRE INS. CO. OF PENNSYLVANIA.

#### No. 10638.

United States Court of Appeals Third Circuit.

Argued March 18, 1952.

Decided May 28, 1952.

J. Webster Jones, Philadelphia, Pa., for appellant.

H. Francis DeLone, Philadelphia, Pa. (William H. Lowery and Barnes, Dechert, Price, Myers & Rhoads, all of Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This is an action to recover on a fire insurance policy. The policy issued by Commonwealth Mutual Fire Insurance Company of Pennsylvania to plaintiff Edwards, a Missourian, insured for a term of one year beginning September 24, 1947 "all buildings and all machinery contained therein and thereon, while located in the gin plant of the assured and situated at or near New Madrid, Missouri". A few months later plaintiff bought additional machinery for his plant from Continental Gin Company, giving the seller a chattel mortgage on this new acquisition to secure deferred installments of the purchase price. At about the same time Southeastern Fire Insurance Company issued a fire insurance policy on the interests of Continental Gin Company and Edwards in "Cotton Gin Machinery while in transit and while located" at the New Madrid plant. On August 28, 1948, while both policies were in force, a fire destroyed the old and the new installations at the New Madrid plant. Commonwealth Mutual denied liability on its policy and plaintiff, invoking federal diversity jurisdiction, sued in the District Court for the Eastern District of Pennsylvania.

The meaning and legal effect of an insurance contract, which bore some relation to both Missouri and Pennsylvania, are in dispute. Pennsylvania conflict of

laws rules should be applied to the facts to discover whether Missouri or Pennsylvania contract and insurance law is controlling. Klaxon v. Stentor, 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. But the record does not show enough about the contacts of the transactions with either state for a determination of the place of contracting.[1] Fortunately, this omission, which in other circumstances might require remand for further fact finding, creates no problem here because we have found no difference between the law of Pennsylvania and the law of Missouri with respect to the generally accepted canons of construction which suffice for decision on the meaning and effect of the present insurance policy.

■ Defendant's principal contention is that the Southeastern Fire Insurance policy violates an "other insurance" clause[2] in its contract with plaintiff. "Other * * * insurance exists where two or more policies of insurance are effected upon or cover the same interest in the same, or part of the same property, against the same risk, and either in the name or for the benefit of the same person". 5 Couch, Insurance § 1039. We think the two policies in this case, properly construed, do not cover the same property.

■ The policy in suit did not insure the machinery subsequently obtained from Continental Gin Company. To support this conclusion we do not need to decide the policy's application to after-acquired property generally. For the policy expressly denies coverage to "any property insured hereunder while encumbered by a chattel mortgage",[3] and the Continental

---

1. Under Pennsylvania law, the place of contracting is the place where an insurance policy is delivered. Western Massachusetts Mutual Fire Insurance Co. v. Storage Co., 1898, 6 Pa.Super. 288, 291. But the place of delivery varies with the method of delivery. If the policy becomes effective upon delivery by mail, the place of contracting is the place of posting. Restatement, Conflict of Laws, § 317. If it becomes effective upon delivery and is sent by the company to its agent and by him delivered the place of contracting is the place of delivery to the assured. Restatement, Conflict of Laws, § 318. In the absence of any proof as to the place of delivery, in the case of life insurance contracts, there is a presumption of delivery at the residence of the insured. Faron v. Penn Mutual Life Ins. Co., 3 Cir., 1949, 176 F.2d 290; Harry L. Sheinman & Sons v. Scranton Life Ins. Co., 3 Cir., 1942, 125 F.2d 442. Here we are not aided by any proof of method or place of delivery. The testimony indicates that the insured resides in Missouri but we have no authority for applying the presumption, applicable in these circumstances to life insurance contracts, to fire insurance policies.

We are not aided either by the fact that the policy was countersigned in Philadelphia. As a general rule, where there is either a statutory or a policy provision indicating that a policy will not become effective until countersigned, the law of the place of countersigning is the applicable law. Wootton Hotel Corp. v. North-

ern Assur. Co., 3 Cir., 1946, 155 F.2d 988; Lumbermen's Mutual Casualty Co. v. Blake, 1946, 94 N.H. 141, 47 A.2d 874; Goldin, The Law of Insurance in Pennsylvania, 2nd ed., 1946, Par. 377; Carnahan, Conflict of Laws and Life Insurance Contracts, 1942, § 40. But the Pennsylvania law, in prescribing the standard policy provisions for fire insurance companies, allows certain permissible variations of which the inclusion or exclusion of a countersigning provision is one. 40 P.S. § 657 2(a). Although defendant's agent did countersign the policy in suit, the inception of the policy is not conditioned, either by policy terms or by statute, upon the countersignature.

2. "Unless otherwise provided by agreement in writing added hereto, this Company shall not be liable for loss or damage occurring,—
Other Insurance. (a) while the insured shall have any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

3. "Chattel Mortgage. Unless otherwise provided by agreement in writing added hereto, this Company shall not be liable for loss or damage to any property insured hereunder while incumbered by a chattel mortgage, and during the time of such incumbrance this Company shall be liable only for loss or damage to any other property insured hereunder".

machinery was mortgaged. We need only to apply the general rule of law and common sense that plain and unambiguous language must be given its apparent meaning. Hale v. Central Mfgs. Mut. Ins. Co., Mo.App., 1936, 93 S.W.2d 271, 274; Topkis v. Rosenzweig, 1939, 333 Pa. 529, 5 A.2d 100; Skelly v. Fidelity & Casualty Co., 1933, 313 Pa. 202, 169 A. 78.

 Conversely, the subsequently issued Southeastern policy covered only the new machinery acquired from Continental Gin Company. That policy's express coverage of "Cotton Gin Machinery" is not precise. But the entire tenor of the policy shows that it is designed primarily to protect a mortgagee's security interest in particular property. The express coverage of the insured property "while in transit" points unmistakably and exclusively to the new machinery about to be delivered. So does the amount of the policy, $2,700, which, to the nearest available unit of insurance equals the $2,630.66 owed on the newly purchased machinery. Clearly, the Southeastern policy covered property entirely distinct from that insured by the defendant and, therefore, did not violate the "other insurance" clause in defendant's policy. Absent controlling Pennsylvania or Missouri decisions, compare Jacobs v. Farmers' Mutual Fire Ins. Co. of Turlock, 1935, 5 Cal.App.2d 1, 41 P.2d 960; Pizillio v. Lincoln Fire Ins. Co. of N. Y., La.App., 1933, 150 So. 107; Brooks v. Liverpool & London & Globe Ins. Co., La.App., 1932, 144 So. 788.

Defendant also claims that it is liable only for three-fourths of the amount of insurance indicated by the policy because of a provision limiting its liability to three-fourths of the "actual cash value of the property insured * * * at the time immediately preceding * * * loss". The insurer is thus suggesting that the amount of insurance is in some way, not apparent to us, synonymous with "actual cash value of the property insured". We find the meaning of the quoted words plain. Here the evidence indicated without contradiction that the value of the property covered by defendant's policy and de-

stroyed by fire was in excess of $25,000. The object of the three-fourths value clause is to compel the insured to carry a portion of the risk himself and thereby induce him to exercise care so as to reduce the risk. Riegel & Miller, Insurance Principles & Practices, 397 (3rd ed., 1948). Since the amount of insurance under this policy, $15,000, was clearly less than three-fourths of the actually proved cash value of the property at the time of loss, plaintiff was entitled to recover the full amount as allowed by the district court.

The judgment will be affirmed.