ANDREWS v. NICHOLS.

(Supreme Court, Appellate Division, Fourth Department. December 28, 1906.)

1. GIFTS—EVIDENCE.

A gift inter vivos may be established on the unsupported testimony of the donee's wife, there being no circumstances throwing suspicion thereon.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gifts, §§ 95–100.]

2. SAME—REQUISITES—DELIVERY.

A gift may be made of a bond and real estate mortgage securing it by delivery thereof without indorsement or written assignment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Gifts, §§ 49, 58, 60.]

3. SAME—EVIDENCE.

In an action to recover a bond and mortgage claimed by defendant to have been given him by plaintiff's testate, it is not error to admit the testimony for defendant of decedent's physician that, a month before his death, he said that if his relations knew what he had done in a business way there would be a good deal of surprise; that his property was his own, and he could do and should do as he liked with it.

Appeal from Judgment on Report of Referee.

Action by J. Allen Andrews, executor of Joseph A. Andrews, deceased, against Cornelius A. Nichols. From a judgment for defendant on the report of a referee, plaintiff appeals. Affirmed.

This action is brought by the plaintiff, as executor of the will of Joseph A. Andrews, deceased, to recover the possession of a bond and mortgage made and delivered by James Stowe to the plaintiff's testator in his lifetime, upon which there remained unpaid $3,900, with interest thereon from June 1, 1905. The referee, as conclusions of law, found that at the time of the commencement of the action the defendant was the owner of the bond and mortgage and entitled to the possession thereof, and directed judgment for the defendant, dismissing the complaint, with costs. In support of his conclusions of law, the referee, among other things, found the following facts:

"That for 20 years or more preceding the death of Joseph A. Andrews he and the defendant had lived just across the road from each other, and had sustained very intimate and friendly feelings towards each other, both in their social and business matters; the decedent loaning money to the defendant, and trusting more or less of his business to defendant, visiting almost daily at his house, taking the defendant and his wife on various excursions, paying the expense thereof, and for a year or more just before his death the decedent had taken his meals at the defendant's home. That for several years prior to said decedent's death defendant's wife assisted the said Andrews in the care of his house and home, his clothes, his bed and bedding, in the same room where he kept his securities in the drawer of a commode, attending to his washing and helping him in many ways. That the defendant frequently made computations of payments upon securities held by the said Andrews. At the time of decedent's death one of his land contracts, known as the 'Effridge contract,' was in defendant's safe at his house, having been left with him for the purpose of making a computation of the amount due thereon. That the proofs do not disclose any considerable indebtedness on the part of Joseph A. Andrews to the defendant, they having made a settlement of various matters on December 4, 1904; but that no payment of money had been made to the defendant or his wife for the board of the said Joseph A. Andrews, or for the taking care of the said Andrews house, his washing, sewing, and mending by the defendant's wife. That the defendant in this action is a married man, and has lived all his life in the town of Chili, Monroe county, N. Y., is a supervisor of said town, serving his third term, and postmaster since 1887, and carries on a general store at his place of residence in said town. That sometime about the middle of October, 1905, the exact date not being proven, the said Joseph A. Andrews, at his residence in said town, gave and delivered the said Stowe

bond and mortgage, described in the complaint in this action, to the defend-
ant herein, with the'intention on the part of said Joseph A. Andrews to trans-
fer the title to said bond and mortgage to the said defendant and that the
said defendant then and there received and accepted the said bond and mort-
gage as a gift, and that thereby and thereupon the said bond and mortgage
became the property of the said defendant, and has ever since been his prop-
erty and in his possession, and that, at the time of the delivery of the said
bond and mortgage to the defendant by the said Andrews, the said Andrews
also delivered to the said defendant the search or abstract of title covering
the premises described in said mortgage, and the policy of insurance upon the
buildings upon the premises covered by said mortgage, and that said search
and policy of insurance have ever since that time been in defendant's posses-
sion. That, at the time of the gift of the said bond and mortgage and the
delivery thereof by the said Andrews as aforesaid, the said Joseph A. Andrews
was of sound mind and memory, and competent in all respects to transact
business, and was so competent to transact business up to the day of his death,
and that said gift of the said bond and mortgage was made freely and volun-
tarily by the said Joseph A. Andrews."

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
NASH, and KRUSE, JJ.

John M. Davy, for appellant.
John Desmond, for respondent.

NASH, J. The findings of fact and conclusions of law of the ref-
eree are challenged by the plaintiff upon the ground that the gift of
the mortgage, unaccompanied by a written transfer, is sought to be es-
tablished by the uncorroborated testimony of Mrs. Nichols, the wife of
the donee, and that there is absent from the case that clear, strong,
satisfactory, and convincing evidence which the law requires to sus-
tain a gift inter vivos. Mrs. Nichols testified that at some time in
the fall of 1905, prior to the death of decedent, at an occasion when
she was at his home, he spoke of the Stowe bond and mortgage, said
it was a good investment, and he had made up his mind he would give
it to Mr. Nichols. This bond and mortgage were given by Stowe to
the decedent about June 1, 1891. It appears by the testimony of Mr.
Stowe that on the 10th of October, 1905, decedent called upon him
for the abstract of title, which Stowe had retained since giving the
mortgage. It was shortly after this that Mrs. Nichols fixes the time
when her husband brought to their house the Stowe bond and mort-
gage and laid them on the desk. She took the papers and looked them
over—the bond, mortgage, insurance policy, and abstract of title; and
her husband took them and put them in his safe. The next forenoon
she went over to decedent's home and had a talk with him on the sub-
ject of the Stowe bond and mortgage. That is what she says she went
over to his house for. That decedent said:

    "'I have made up my mind what I will do for Mr. Nichols. He has done
more for me than any relative I ever had, and I shall help him.' And he
says: 'I gave him the Stowe bond and mortgage.' He says: 'Did he tell
you that I gave it to him?' I said: 'Yes; he did. Why did you do it?' He
says: 'Because I wanted him to have it.'"

There is some other evidence having some bearing upon the ques-
tion. Dr. Gandy, decedent's physician, testified that about a month be-
fore his death decedent was in his office and in talking about his prop-
erty said:

"If his relations knew what he had done in a business way there would be a good deal of surprise; that his property was his own, and he would do and should do as he liked with it."

The decedent had made his will prior to that time, in which he devised his real estate, of the value of $15,000, to the plaintiff, his nephew, and bequeathed his personal property, amounting to some $20,000, to plaintiff's sister. To a neighbor, Mr. Patterson, shortly prior to his death, decedent said, speaking of defendant:

"I have helped Mr. Nichols, and done things for him. * * * Mr. Nichols has done things for me, and has accommodated me in a great many ways, and I shall help him again."

To another neighbor, Mr. Miller, decedent said, in a conversation regarding Mr. Nichols' candidacy for supervisor that year:

"I want Corneil [Mr. Nichols] elected. I don't care what I have done for Corneil. He has been a better friend than my relations. He has done more for me than my relations."

The evidence upon which the referee based his findings of fact was undisputed. While the evidence to establish contracts—gifts inter vivos or causa mortis, sought to be enforced after death—is always closely scrutinized by the courts, and clear, convincing, and satisfactory proof of the facts is required, gifts may be upheld upon the unsupported evidence of a wife, husband, or other relative of a party. The fact that the witness by whom it is sought to establish the gift may be said to be interested in the result should not preclude a finding that the gift had been established by the testimony of such a witness. "If the question as to the gift was being tried before a jury, the mere fact that the witness proving the gift was the wife of the donee would not permit the court to take the question from the jury; and if the jury under proper instructions believed the wife, and there was nothing which made it manifest that the story of the wife was incredible, the verdict could not be disturbed." Van Brunt, P. J., in 76 Hun, 467, 28 N. Y. Supp. 99. In Bouton v. Welch, 170 N. Y. 554, 63 N. E. 539, the report of the referee established the gift of a mortgage to the wife upon the unsupported testimony of the husband to an oral agreement. Having been affirmed, the Court of Appeals, in adjudging that the husband was a competent witness, held that the affirmance of the Appellate Division was conclusive, if no legal error was committed in the reception or exclusion of evidence. In Westerlo v. De Witt, 36 N. Y. 340, 93 Am. Dec. 517, the delivery of a certificate of deposit, without indorsement, by a decedent in her last illness, accompanied by words evincing an intention to make a gift, was found by a referee to have been intended as a gift, upon the solitary testimony of the donee herself (35 Barb. 215). The judgment entered upon the report of the referee having been reversed by the General Term, the Court of Appeals, in reversing the judgment of that court and affirming the decision of the referee, held that choses in action, such as bonds and mortgages and promissory notes not indorsed, may well be transferred by delivery only, as a donatio causa mortis. The court held that the question of reviewing the findings of the referee was before the court in the same manner as an original question that it was before the General Term, and in answer-

ing the question, stated by the court, per Hunt, J., "Are we so certain that the referee was in error upon the facts, that we will reverse his judgment?" reversed the judgment of the General Term and affirmed that of the referee.

In the cases to which we are referred, where the evidence has been held insufficient to establish the alleged contract, or gift, upon the uncorroborated testimony of the wife, husband, or relative, there were circumstances of suspicion, or the character of the witness was such as to shake the confidence of the court in passing upon the facts of the case.   Farian v. Wiegel, 76 Hun, 462, 28 N. Y. Supp. 95; Matter of Manhardt, 17 App. Div. 1, 44 N. Y. Supp. 836; Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916.   In the Farian Case the donee claimed the entire estate of the donor, to the exclusion of his next of kin.   All the testimony tending to support the gift was given by the donee's wife. The entire estate consisted of money deposited in six savings banks. There were, as stated in the opinion, circumstances of great probative force which rendered the testimony of the wife improbable.   In the Manhardt Case the donee did not assert his claim until six months after the death of the donor, and after he had been required by the Surrogate's Court to surrender the securities claimed as a gift, and in the meantime had made admissions inconsistent with his claim, and had exhibited the bond and mortgage in question as a part of the donor's estate.   In the Rosseau Case a promise of the decedent to settle $100,000 upon his illegitimate child was supported only by the testimony of the mother.

We think that in this case the findings of the referee should not be disturbed, and we are of the opinion that there was no error committed by the referee in receiving the testimony of Dr. Gandy, or of the defendant, as a witness, in reply to the testimony of the plaintiff given in his own behalf.   The judgment should be affirmed.

Judgment affirmed, with costs.   All concur.