CURRIE, Administrator, Appellant, *v.* LANGSTON, Respondent.

(No. 6,949.)

(Submitted October 15, 1932.  Decided December 1, 1932.)

[16 Pac. (2d) 708.]

*Mr. N. A. Rotering*, for Appellant, submitted a brief and argued the cause orally.

*Mr. Miles J. Cavanaugh* and *Mr. R. Lewis Brown,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff, as administrator of the estate of John G. Currie, deceased, brought this action to recover the sum of $3,975, lawful money of the United States. He alleges that John G. Currie was the owner of the money at the time of his death, on April 5, 1930, and that defendant at about that time took possession of it and converted it to his own use. The answer is in effect a general denial together with an affirmative allegation that all of the money in the possession of

defendant at the time of and since the death of John G. Currie is the sole, separate, and individual money of defendant. The jury found for defendant, and judgment was entered in his favor for costs. Plaintiff's motion for a new trial was denied, and this appeal is from the judgment.

The facts developed at the trial were these: John G. Currie at the time of his death was eighty-eight years of age. He lived for many years at 942 Quartz Street, in Butte. He was a bachelor. Plaintiff, a nephew, who lives at Ryegate, is the only relative living in Montana. Defendant for about twenty years prior to the death of John G. Currie, at the latter's request, made his home with him. Defendant became his intimate companion, and was the only person with whom Currie associated for many years prior to his death.

Currie kept a bank account, but also kept a considerable amount of currency buried on the premises at 942 Quartz Street. On the day of his death there was admittedly some currency in the house occupied by him and defendant, but the exact amount and the ownership of it are in dispute.

Plaintiff called as a witness Mrs. J. M. Gillies, who lived directly across the street from the habitat of the deceased. She testified that defendant brought a tin box or can containing $1,390 in currency and $2,100 in gold to her house on the evening of April 5, dumped it on the kitchen table, and said, "Ain't that wonderful? I never knew the old man had that much." The gold, she said, was counted in her presence. She said that defendant requested her daughter, Edna, to keep it for him, until he came back from Iowa, where he accompanied the body of John G. Currie for burial. The money was placed in the piano in her house for safekeeping, and there remained until about the middle of June, 1930. On cross-examination it was developed that, when defendant got back from the trip east, her daughter Edna requested him to take the money away because she did not want the responsibility of keeping it, and that defendant then said "he would wait a few days; that he was going to be administrator and that he was going to advertise that money."

Two appraisers of the estate testified for plaintiff to the effect that on September 5, 1930, they, in company with others, interviewed the defendant with respect to money in the house at the time of the death of Mr. Currie; that defendant at first was reluctant to give any information; that he first asserted that there was no money in the house, but finally, after considerable questioning for some fifteen minutes, admitted that there was, but that it had been given.to him by Mr. Currie; that he also stated that money had been buried under the stove, but witnesses found no indication that the floor had been disturbed.

The administrator testified that defendant had told him, while John G. Currie was in the hospital during his last illness, that deceased had during his lifetime hidden some gold coin in and about the house; that, after the death of Currie, plaintiff and defendant looked for the money at different times, and that defendant did not tell plaintiff that he had already removed it from the house.

Defendant, testifying in his own behalf, said he first saw the money in question in 1914. That John G. Currie kept it hidden in various places around the house. That on Christmas Day in 1923 Currie brought the money out, placed it on the table and counted it, called the witness over, and said: "Now, son, I am going to make you a Christmas present of this. I promised this to you three or four years ago. Here it is. I want you to keep this money as long as you live. Now I kept this money for years and I want you to keep it as long as you live, and never put it in a bank or any other place, because if it goes broke you won't have any money, and that is why I kept it. You keep it and in case the banks go broke you will have a few dollars left. You will have bean money." That ever since that time the witness kept the money in a fruit jar wrapped in paper. That he claimed the money as his own since that time and buried it in the ground. That it was buried until he and Currie got a safe in 1929. That defendant used one-half of the safe and Currie the other half. That the money was then placed

in his part of the safe, he retaining the key to that particular drawer. That, after Currie died, he took the money to the Gillies residence. That the money consisted of $1,380 in gold and $1,370 in currency. That it was taken there at the suggestion of the Gillies for safekeeping while the witness accompanied the body of deceased to Iowa for burial. He denied making the statement to the effect that he did not know the old man had that much money, and said that he told Mrs. Gillies and her daughter that the old man had given him the money.

Plaintiff assigns error in permitting defendant over objection to testify concerning the gift, inasmuch as the answer does not contain any allegations concerning it. This evidence was admissible under the general denial, for the rule is "that in an action in conversion defendant under a general denial may prove that he and not the plaintiff is the owner of the property alleged to be converted." (*Staubach* v. *Rexford*, 2 Mont. 565; *Kipp* v. *Silverman*, 25 Mont. 296, 64 Pac. 884; *Donovan-McCormick Co.* v. *Sparr*, 34 Mont. 237, 85 Pac. 1029; and see *Gallick* v. *Bordeaux*, 22 Mont. 470, 56 Pac. 961.) And where, as here, in an action of conversion brought by the administrator, defendant's ownership depends upon a gift *inter vivos,* evidence thereof is admissible under the general denial. (*Manning* v. *Maytubby*, 42 Okl. 414, 141 Pac. 781.) The contrary rule, however, was asserted in *Matter of Canfield's Estate,* 176 App. Div. 554, 163 N. Y. Supp. 191. We believe the Oklahoma court announced the correct rule.

Related to this assignment of error is the claim of plaintiff that the court misdirected the jury on the question of the burden of proof. Without objection, the court instructed the jury that the burden is upon the plaintiff to prove each and every controverted allegation in his complaint by a preponderance of the evidence. Over plaintiff's objection, the court gave instruction numbered 10, to the effect that the burden of proving that the money was the property of John G. Currie at the time of his death is upon the plaintiff. Likewise, over plaintiff's objection, the court gave instruction

numbered 18, reading as follows: "You are instructed that in this case Langston claims that John G. Currie voluntarily delivered the gold and currency in dispute to him with the present intention to vest the title in him, and that he accepted it; and unless you find by a preponderance of the evidence in this case that this claim by Langston is not true, your verdict should be for the defendant."

Plaintiff's objection to instructions numbered 10 and 18 was to the effect that, when defendant relies upon a gift, the burden rests upon him to establish it. Plaintiff also offered instruction numbered 26, placing the burden of proving the gift upon defendant. This was refused.

Here the evidence shows without dispute that the property in question at one time belonged to decedent, and that he was the owner of it at the time of his death, unless prior thereto he made the gift claimed by defendant. The cases are in accord that one who claims property by virtue of a gift *inter vivos*, and particularly when it is not asserted until the lips of the donor are sealed by death, has the burden of proving that fact. (*Matter of Canfield's Estate*, supra; *In re Humphrey's Estate*, (Sur.) 183 N. Y. Supp. 133; *In re Crook's Estate*, (Sur.) 190 N. Y. Supp. 285; *In re Wilson's Estate*, 140 Misc. Rep. 10, 250 N. Y. Supp. 553; *In re Weeks' Estate*, 142 Misc. Rep. 752, 256 N. Y. Supp. 387; *In re Calen's Estate*, 142 Misc. Rep. 363, 255 N. Y. Supp. 383; *Knight* v. *Mears*, 156 Va. 676, 159 S. E. 119; *First Nat. Bank of Lyndhurst* v. *Rutherford Trust Co.*, 109 N. J. Eq. 265, 157 Atl. 142; *Feil* v. *First Nat. Bank*, (Mo. App.) 269 S. W. 936; *In re Van Fossen*, (Mo. App.) 13 S. W. (2d) 1076; *Stiness* v. *Brennan*, 51 R. I. 284, 154 Atl. 122; *Bean* v. *Bean*, 71 N. H. 538, 53 Atl. 907; *Madison Trust Co.* v. *Allen*, 105 N. J. Eq. 230, 147 Atl. 546; *Buckel* v. *Smith's Admr.*, 26 Ky. Law Rep. 494, 82 S. W. 235; *Barr* v. *Bacon*, 162 La. 758, 111 South. 86; *Eichin* v. *Eichin*, 244 Ill. App. 89; *Eckstrom* v. *Brooks*, 115 Cal. App. 727, 2 Pac. (2d) 207; *In re Yeager's Estate*, 273 Pa. 359, 117 Atl. 67; and see *Stagg* v. *Stagg*, 90 Mont. 180, 300 Pac. 539.)

But in reliance upon the cases of *Mauldin* v. *Ball,* 5 Mont. 96, 1 Pac. 409, *Leggatt* v. *Stewart,* 5 Mont. 107, 2 Pac. 320, *Meyendorf* v. *Frohner,* 3 Mont. 282, *Stephens* v. *Conley,* 48 Mont. 352, Ann. Cas. 1915D, 958, 138 Pac. 189, *Sell* v. *Sell,* 58 Mont. 329, 193 Pac. 561, and others of the same general effect, it is contended by defendant that evidence of the gift is not new matter in the way of an affirmative defense, but is admissible under the general denial to defeat plaintiff's claim of ownership in deceased, and hence that defendant need not carry the burden of proof, but that this remains with the plaintiff throughout the trial. The answer to this contention is found in the case of *Spencer* v. *Barlow,* 319 Mo. 835, 5 S. W. (2d) 28, 32, where, in response to a like contention, the supreme court of Missouri said: "Generally speaking, defendant's contention is true, but when the evidence develops that the defendant is claiming ownership by virtue of a gift from her mother, the situation is so changed upon the complete facts coming to light as to call in force with respect to a gift the general rule as to the burden of proof. In other words, if defendant had fully developed the facts in her answer as to the gifts, the burden would at once have been cast upon her. To rule otherwise would circumvent an obvious, and what the courts have deemed a salutary, rule of law."

The defendant also contends that, by permitting the jury ▋ to be instructed without objection that the burden of proof is on plaintiff to establish by a preponderance of the evidence the controverted allegations of his complaint, the plaintiff waived the error of the court in not placing the burden of proof on defendant to establish the gift. This contention cannot be sustained. At the outset, the burden did rest with plaintiff to make out a prima facie case. When he had done this, and it developed that defendant relied upon a gift as a defense, the burden of establishing the gift shifted to defendant (compare *Meagher* v. *Harrington,* 78 Mont. 457, 254 Pac. 432), and the jury should have been so advised. ▋ The court erred in not so doing. When the burden of

proof is erroneously placed on the unsuccessful party, it constitutes reversible error. (38 Cyc. 1749.)

As an aid to court and counsel upon another trial, other questions deserve consideration:

Plaintiff complains that the court erred in permitting the defendant, on cross-examination of Mrs. Gillies, to develop the fact, over his objection, that her daughter had instituted an action against the administrator and heirs to recover one-third of the estate. The evidence was admissible as bearing upon the interest of the witness.

It is contended that the court erred in permitting defendant to show on the cross-examination of plaintiff that he had not visited his uncle for the past twenty-one years. On his direct examination the plaintiff had testified that John G. Currie was his uncle; that the witness knew him in his lifetime; that the witness was his nearest relative and the only relative in the state; and that Currie was not related to defendant Langston. It was proper on cross-examination to develop the relationship between the witness and John G. Currie and the extent of the acquaintanceship between them, to rebut the inference, brought out on direct examination, that, because of the blood relationship between the plaintiff and deceased, plaintiff would be the one to whom the decedent desired to leave his property.

Over plaintiff's objection, defendant was permitted to show why he was residing with Currie, and that it was at the latter's request, and plaintiff assigns this as error. The evidence was admissible as bearing upon the probability of Currie making the gift claimed by the defendant.

Plaintiff assigns error in permitting defendant to testify over objection that Currie had agreed to leave his entire estate to defendant. This was admissible to show the feelings existing between Currie and defendant and to show the probability of the gift claimed. (See generally, 28 C. J. 675, 676.)

Error is assigned in permitting defendant, over plaintiff's objection, to testify that Currie told him that he had

no use for his relatives, that several of them had beaten him out of money, and that a nephew beat him out of seven or eight thousand dollars, and a half-brother to the extent of three thousand dollars. It was not error to admit this evidence. It bore directly upon the feelings of Currie toward those who would naturally be the subjects of his bounty, and explains the seeming improbability that he would make a gift to one not related by blood or marriage, such as that claimed by defendant. (Compare *Moore's Admr.* v. *Cross,* 86 Vt. 148, 84 Atl. 22; *Andrews* v. *Nichols,* 116 App. Div. 645, 101 N. Y. Supp. 977; *Rogers* v. *Manhattan Life Ins. Co.,* 138 Cal. 285, 71 Pac. 348.)

The court refused to give offered instruction numbered 27; this is assigned as error. That offered instruction was as follows: "You are instructed that if there were any statements by the decedent in his lifetime that he would give to Langston any of his property or that he would make a will in favor of Langston for any of his property, that that would not justify the defendant to take into his possession as his own any of the property belonging to the decedent at the time of his death." Conceding that the offered instruction is not objectionable, we think prejudicial error was not committed in refusing it. The instructions as a whole fairly presented the issues upon which the case should turn, viz.: Who is the owner of the property involved, and the instructions as a whole make it clear to the jury that the question of ownership depended upon whether or not Currie had made the gift replied upon, and not upon the statements of Currie as to who should have his property after his death.

In reliance upon the rule stated in *Casey* v. *Northern Pac. R. Co.,* 60 Mont. 56, 198 Pac. 141; *Whitney* v. *Bertoglio Merc. Co.,* 65 Mont. 358, 211 Pac. 323; *Roman* v. *Albert,* 81 Mont. 393, 264 Pac. 115; *State* v. *Gunn,* 85 Mont. 553, 281 Pac. 757; *Putnam* v. *Putnam,* 86 Mont. 135, 282 Pac. 855, and other cases, it is contended that the verdict and judgment cannot stand. It is true that defendant on his cross-examination made evasive and contradictory statements as to the location of

the money at the time of the trial. We are not warranted on this account to reject all of the story of the defendant with respect to the gift. The record does not warrant the application of the rule announced in the foregoing cases to this case.

Other questions which may arise upon another trial and which are here urged as grounds for reversal are equally without merit.

For error in the instructions on the burden of proof with respect to the gift, the judgment is reversed, and the cause remanded for a new trial.

MR. CHIEF JUSTICE CALLAWAY, MR. JUSTICE MATTHEWS, HONORABLE LYMAN H. BENNETT and HONORABLE R. M. HATTERSLEY, District Judges, sitting, respectively, in place of MR. JUSTICE GALEN and MR. JUSTICE FORD, disqualified, concur.