PLANK, Administrator, Respondent v. HEIRIGS, Appellant

(156 N.W.2d 193)

(File No. 10412. Opinion filed February 14, 1968)

**Davenport, Evans, Hurwitz & Smith, Robert C. Heege,** Sioux Falls, for defendant and appellant.

**Doyle & Bierle,** Yankton, for plaintiff and respondent.

HOMEYER, Judge.

On December 7, 1965, Bernice Ebright sustained a severe head and brain injury when an automobile driven by her husband in which she was riding collided with the rear end of a trailer loaded with baled hay which was being pulled upon a public highway by a tractor owned and operated by the defendant. On May 18, 1966, L. L. Plank as her guardian ad litem sued defendant to recover for permanent injuries, pain and suffering, and medical expenses. Bernice Ebright died on August 20, 1966, and Plank was appointed special administrator of her estate and substituted as plaintiff in the pending action.

A jury awarded plaintiff $30,000 in damages and the defendant appeals. The questions presented require no detailed statement of facts. Such as are necessary will appear in the discussion that follows.

## Alleged error in restricting cross-examination on other possible actions.

At the commencement of trial and in the absence of the jury plaintiff moved the court to admonish counsel for the defendant to refrain from alluding to any other lawsuits that may result from the accident.[1] The motion was granted. At the close of all the evidence, defendant asked the court to rescind its ruling which it refused to do.[2]

In this state, a cause of action for medical expenses and pain and suffering survives the deceased person and is maintainable, SDC 1960 Supp. 33.0414-1, Lanning v. Schulte, 82 S.D. 528, 149 N.W.2d 765; Steckman v. Silver Moon, Inc., 77 S.D. 206, 90 N.W.2d 170, and in addition an independent cause of action exists for wrongful death on behalf of designated beneficiaries.[3] SDC 1960 Supp. 37.22; Rowe v. Richards, 32 S.D. 66,

1. "Mr. Doyle: * * * I would like to make a motion for the court to admonish counsel for the defendant (not) by any manner to insinuate or infer the potential or possibility of any other law suit that may grow out of this accident or collision on behalf of any designated beneficiaries or other parties. It is immaterial to any of the issues in this present law suit as claimed by these pleadings. * * * The reason is that I don't want counsel to insinuate, during the course of this trial, that there will be other large law suits pending at the conclusion of this action because as of now this is not so.
 "The Court: Yes. I think it would be perfectly proper that counsel should not allude to any possible other action. Counsel is so directed not to allude to the possibility of other suits growing out of this action.
 "Mr. Evans: Will that go so far as to restrict my cross examination of witnesses regarding any such action, plans that have been made to bring such an action? "The Court: Oh yes, I don't think you should allude to it at all."

2. "Mr. Evans: Let the record show that during the course of the trial counsel for defendant has followed the order entered by the court whereby the court ordered counsel for the defendant not to interrogate any witness with regard to any other litigation which might be contemplated or might be instituted by either the plaintiff, being the special administrator, or by the husband, being Mr. Ebright. At this time we ask the court to rescind that ruling so that we can explore those matters upon cross examination. * * * I do feel that now is the time to bring that to the court's attention again in case the court may have changed its view upon that problem.
 "The Court: The court has not changed its view on the problem since it made the ruling prior to the commencement of the trial."

3. SDC 1960 Supp. 37.2203, as amended. "Every action for wrongful death shall be for the exclusive benefit of the wife or husband and children, or if there be neither of them, then * * *"

142 N.W. 664, L.R.A.1915E, 1069. The husband, if he so chose, could also sue for loss of consortium from the date of the accident to the date of his wife's death, Hoekstra v. Helgeland, 78 S.D. 82, 98 N.W.2d 669, Binegar v. Day, 80 S.D. 141, 120 N.W.2d 521, and for his own personal injuries, if he sustained any, and for property damage to his automobile.

██ ██ An adverse witness on cross-examination may be required to disclose any facts which tend to show bias and interest in the action so that the trier of fact may consider it in weighing his testimony. Hanson v. Township of Red Rock, 7 S.D. 38, 63 N.W. 156; 58 Am.Jur., Witnesses, § 721, p. 389; 98 C.J.S. Witnesses § 539, p. 476. Benefits accruing to a witness from a favorable termination of litigation are always competent and may be shown and considered as bearing on the credit to be accorded to testimony given.

It would have been entirely proper for the defendant on cross-examination to have inquired of the husband and children of the decedent who were witnesses for the plaintiff as to their interest in the action. The husband was legally responsible for the medical bills of the decedent and would be interested in seeing that defendant was held liable therefor and he and the children were heirs of the decedent and as such may have been entitled to share in her estate after debts and other charges were paid. The record is devoid of interrogation concerning this interest in the litigation, although the ruling of the court did not restrict the defendant in this regard and only required him to refrain from alluding to other possible actions arising out of the accident.

██ Generally, in civil actions courts have allowed one party to cross-examine an opponent's witness concerning a pending civil suit involving the same subject matter. Kunz v. Munzlinger, Mo.Sup., 242 S.W.2d 536; Ellsworth v. Ellsworth, Tex. Civ.App., 151 S.W.2d 628; Currie v. Langston, 92 Mont. 570, 16 P.2d 708; Timm v. Schneider, 203 Minn. 1, 279 N.W. 754. Sometimes interest has been permitted to be shown by asking

about pending suits which a witness has growing out of the same accident, but refusal to allow inquiry concerning the nature of the injuries sued for or the amount of damages sought, has been said to be no abuse of discretion. Eden v. Klaas, 166 Neb. 354, 89 N.W.2d 74. Cross-examination of a witness as to claims which might be asserted if the party for whom he was testifying prevailed has also been permitted for the purpose of showing bias and prejudice. Poore v. Boston & Main Railroad, 77 N.H. 595, 90 A. 791; Ferguson Seed Farms, Inc. v. McMillan, Tex.Com.App., 18 S.W.2d 595, 63 A.L.R. 1009.

■ The extent to which a witness may be cross-examined as to facts which are otherwise immaterial for the purpose of testing his reliability and to show bias and prejudice is ordinarily within the discretion of the trial court and much latitude is to be allowed in this line, and unless an abuse of discretion is clearly shown either in allowing or restricting such cross-examination, this court will not interfere with the ruling of the court below. Holdridge v. Lee, 3 S.D. 134, 52 N.W. 265; State v. Kenstler, 44 S.D. 446, 184 N.W. 259; State v. Goff, 79 S.D. 138, 109 N.W.2d 256.

■■ We would have been better satisfied had the trial court allowed cross-examination concerning other claims and possible actions in which some of plaintiff's witnesses had an interest and could benefit by a favorable result in the instant action since such interest could be considered by the jury in weighing their testimony. Nevertheless, when considering the nature of the testimony of these witnesses, its cumulative character, and the relationship of these witnesses to each other and to the subject matter of the action, we are unable to perceive how defendant could have been prejudiced. Certainly the jury knew in the absence of cross-examination concerning other actions that a husband and children are interested and apt to be biased in their testimony in an action involving a wife and mother, whether she be deceased or still alive, and would take this into account in weighing their testimony. Likewise, as we have stated supra, the court did not restrict defendant in cross-examination as to their interest in the pending action although defendant chose not to inquire in that regard. Such cross-examination would

not have been in violation of the ruling of the court. The burden was upon appellant to show not only error but prejudicial error. Alberts v. Mutual Service Casualty Insurance Co., 80 S.D. 303, 123 N.W.2d 96. In our opinion he has failed to do this. See also 61 RCP on Harmless Error.[4]

### Claimed misconduct of jury.

Appellant contends the trial court erred when it denied a new trial under 59a(2) RCP, formerly SDC 1960 Supp. 33.1605(2) because of misconduct of the jury in returning what he claims is a quotient verdict. Affidavits of two jurors were submitted with the motion for new trial, one of which was later corrected and in effect repudiated, which show a verdict was reached "by a resort to the determination of chance" under the rule of Long v. Collins, 12 S.D. 621, 82 N.W. 95. On the other hand ten of the jurors submitted affidavits in which they stated after it was determined plaintiff was entitled to recover and after a number of ballots on specific amounts of damages, it was suggested each write on a separate piece of paper an amount believed to be reasonable and then see what the average would be; that this was done; that there was no advance agreement that such average would be the final verdict; that no juror relinquished his right to afterward object, but reserved such right should he think the sum unreasonable. Three of the jurors in addition positively swore that a separate ballot on $30,000 as damages was later taken and approved. The latter affidavits (10) presented a situation substantially similar to what occurred in Abdenor v. Gould, 45 S.D. 101, 186 N.W. 120, when this court held if the method used is merely to ascertain what each juror considers reasonable reserving the right to object if he thinks it unreasonable a verdict free from chance may be obtained and should stand. This rule has been consistently followed since that decision. See cases in West's Dakota Digest, Trial, key 315.

---

4. South Dakota RCP 61: "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

■ The affidavits of the jurors presented a disputed question of fact with at least ten jurors committed to or tending to one version and one or two in opposition on what transpired within the confines of the jury room. The trial court resolved the dispute in favor of respondent and upheld the verdict. We agree with this ruling. Stene v. Hillgren, 78 S.D. 1, 98 N.W.2d 156.

### Alleged error in admitting as evidence
### nurses' hospital notes.

The court admitted into evidence hospital records consisting of nurses' notes. We hold they were properly admitted. Exhibit 12 covers the period from December 9, 1965 to December 22, 1965, when Mrs. Ebright was a patient in St. Joseph Mercy Hospital at Sioux City, Iowa. Exhibit 13 contains nurses' notes of Sacret Heart Hospital at Yankton from the date of the accident before her removal to Sioux City. Exhibit 14 consists of nurses' notes—Sacred Heart Hospital—December 22, 1965 to February 16, 1966.[5] These exhibits were offered and received under the Uniform Business Records as Evidence Act, SDC 1960 Supp. 36.1001, with foundation for their introduction made through the custodian of such records from each institution.

We have not heretofore had occasion to consider whether hospital records are within the scope of the Act. Courts are not in agreement on the question. See annotations 75 A.L.R. 378 and 120 A.L.R. 1124, 26 Am.Jur., Hospitals and Asylums, § 6.

In Clark v. Bergen, 75 S.D. 48, 59 N.W.2d 250, we held scale slips of quantities used in road construction made in the regular course of business were properly admitted under the Act. In Bentz v. Cimarron Insurance Company, 79 S.D. 510, 114 N.W.2d 96, we reversed and held the trial court had abused its discretion in refusing to allow into evidence correspondence between an agent and his home office pertaining to insurance coverage.

---

5. Mrs. Ebright was again hospitalized at St. Joseph Mercy Hospital in Sioux City from February 16, 1966 to March 3, 1966 when she returned to Sacred Heart Hospital at Yankton where she remained until her death on August 20, 1966.

We said: "The Business Records Act is based on the premise that entries and memoranda made in the regular course of business contemporaneously with an act, condition or event are circumstantially trustworthy having been made before any issue arises and before any motive to misrepresent occurs. To effectuate its purpose the act should be liberally construed."

■ A review of many cases from other jurisdictions convinces us the majority holding is that portions of hospital records when made in the regular course of business pertaining to hospitalization and recording observable acts, conditions and events incidental to the treatment of the patient are admissible as evidence of the facts therein recorded insofar as relevant to the issues involved if prepared and identified as required by the Act. McReynolds v. Howland, 218 Or. 566, 346 P.2d 127; Weis v. Weis, 147 Ohio St. 416, 72 N.E.2d 245, 169 A.L.R. 668; Sims v. Charlotte Liberty Mutual Insurance Co., 257 N.C. 32, 125 S.E.2d 326; Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 55 A.L.R.2d 1022. The reasons and logic for their admission are stated in VI Wigmore on Evidence, 3rd Ed., § 1707, p. 36:

> "* * * the calling of all the individual attendant physicians and nurses who have cooperated to make the record even of a single patient would be a serious interference with convenience of hospital management. There is a Circumstantial Guarantee of Trustworthiness * * * for the records are made and relied upon in affairs of life and death. Moreover, amidst the day-to-day details of scores of hospital cases, the physicians and nurses can ordinarily recall from actual memory few or none of the specific data entered; they themselves rely upon the record of their own action; hence, to call them to the stand would ordinarily add little or nothing to the information furnished by the record alone."

The fact that the person who made the entry is not called as a witness and thus not subject to cross-examination is not material since the very purpose of the Act is to make it unnecessary

to call as witnesses the persons who made the entries. Brown v. St. Paul City Railway Company, 241 Minn. 15, 62 N.W.2d 688, 44 A.L.R.2d 535.

■ Admission of hospital records under the Act does not necessarily mean that all parts are automatically admissible and if proper objection is made to parts of the record on grounds other than hearsay, generally such parts may be properly excluded. Allen v. St. Louis Public Service Co., supra. In McGowan v. City of Los Angeles, 100 Cal.App.2d 386, 223 P.2d 862, 21 A.L.R.2d 1206, the court said the Act "does not change the rules of competency or relevancy with respect to recorded facts. It does not make that proof which is not proof. It merely provides a method of proof of an **admissible** 'act, condition or event.' It does not make the record admissible when oral testimony of the same facts would be inadmissible." In Brown v. St. Paul City Railway Co., supra, the court said a self-serving statement made by a patient to her doctor and contained in the hospital report concerning the manner in which a patient sustained an injury should have been excluded. "Not every written memorandum, letter, or report * * * is admissible under the act simply because it was made or rendered in the conduct of some business." Bentz v. Cimarron Insurance Co., supra.

■ The objection to the three exhibits was to the whole thereof and did not point out any specific portions which were objectionable or the reasons therefor. Essentially the objection was to foundation and that the admission of the exhibits prevented cross-examination of the parties who made the entries. We are satisfied that there was adequate foundation for the admission of these exhibits. The proof that these were the regular charts of the patient kept and used by the hospital in her care and treatment was sufficient to warrant their admission. That no cross-examination is allowed the adverse party of the person who made the entry is of no consequence when the records are otherwise admissible under the Act.

We have carefully examined the nurses' records and are unable to find any portions which we feel should have been ex-

cluded even under specific objection.[6] The trial involved a sharply disputed issue on damages for pain and suffering. Appellant earnestly contended in the trial court and now in this court that Mrs. Ebright was in a semi-conscious or unconscious condition at all times following the accident and consequently there could be no recovery for pain and suffering. Respondent contended otherwise.[7] The medical testimony was not too clear. The nurses' notes were enlightening in this regard.

█ Nurses attending Mrs. Ebright were qualified to testify to her health and physical condition. Moberg v. Scott, 42 S.D. 372, 175 N.W. 559; Smith v. Weber, 70 S.D. 232, 16 N.W.2d 537. They could testify to her expressions of pain and complaints. Bordwell v. Mission Hill Township, 40 S.D. 78, 166 N.W. 229. Annot. 90 A.L.R.2d 1071. Their testimony was also competent on whether or not she appeared to be in a coma, Northwestern University v. Crisp, 211 Ga. 636, 88 S.E.2d 26, conscious, semi-conscious, or unconscious, Jewel Tea Company v. McCrary, 197 Ark. 294, 122 S.W.2d 534. See generally, 32 C.J.S. Evidence § 546(23). The foregoing and manifestations thereof were all observable acts and conditions and admissible under the Uniform Act as exceptions to the hearsay rule.

Hospital records were admitted when pain and suffering were an issue in Gearhart v. Des Moines Ry. Co., 237 Iowa 213, 21 N.W.2d 569, and Kardas v. State, 44 Misc.2d 243, 253 N.Y.S.2d 470. In Kardas, the court said: "It is well settled that entries in hospital records are within the 'business entry' statute * * * The hearsay exception extends to recorded information obtained by observation by all persons under a duty so to report."

6. Samplings of statements appearing progressively in the nurses' notes: Patient coherent but asks to get up continually; when spoken to attempts to speak; answers questions with complete sentences; asked to go to bathroom; alert and coherent; seems quite depressed today; up sitting in chair—offers no complaints—visiting with family—wants to stay up; up in chair * * * complains of back pain * * * complaining of backache; up walking in hall with help—very weak in knees; very disoriented—up sitting in chair—talks constantly to herself—cries a little—hard to understand—still confused—husband with her; talks in whisper; responds to talk but cannot contribute to conversation; seems to be incoherent this p.m.; speaks at intervals; seems to hear and understand when talked to, but doesn't respond; very lethargic, non responsive to questions; moans and mumbles at times—looks better but doesn't respond; up in wheel chair for @ 30 minutes mumbling some words; remains unconscious—transferred to Sioux City by ambulance (final entry).

7. No nurses' notes were introduced after February 16, 1966. We imply from this and statements in respondent's brief that after that date it is conceded Mrs. Ebright was totally unconscious and incapable of realizing pain.

Appellant strongly urges upon us the decision in Anderson v. Evans, 164 Neb. 599, 83 N.W.2d 59 to support his position. We have carefully considered the holding in that case. It appears to have been primarily predicated on lack of foundation and a determination that the nurses' notes as used in that case did not qualify as business records. We are not persuaded by such decision. In our opinion the Act is entitled to broader application than given it by that court.

### Instructions on pain and suffering.

Appellant requested the following instruction and several others of similar import and refusal to give them is assigned as error: "You are instructed that if you find for the Plaintiff in this action, you should not award any damages for any pain or mental suffering sustained by the decedent unless you find as a fact that the decedent actually suffered conscious pain or suffering by reason of her personal injuries." It is true that there can be no recovery for pain and suffering while an injured person is unconscious and damages are only allowable for such time as the injured person is conscious. Stone v. Sinclair Refining Co., 229 Mich. 103, 200 N.W. 948; Vanderlippe v. Midwest Studios, 137 Neb. 289, 289 N.W. 341; Lewis v. Read, 80 N.J.Super. 148, 193 A.2d 255; 25 C.J.S. Damages § 62; 22 Am. Jur.2d, Damages, § 246. When an injured person is killed instantly, Great Northern Ry. Co. v. Capital Trust Co., 242 U.S. 144, 37 S.Ct. 41, 61 L.Ed. 208, or dies without regaining consciousness, New Orleans & Northeastern Railroad Company v. Harris, 247 U.S. 367, 38 S.Ct. 535, 62 L.Ed. 1167, Canales v. Bank of California, Tex.Civ.App., 316 S.W.2d 314, Carr v. Arthur D. Little, Inc., 348 Mass. 469, 204 N.E.2d 466, damages cannot be awarded for pain and suffering.

The court instructed generally that damages should be fair and only in such amount as will fairly compensate for injuries sustained and in no event should result from prejudice, passion, speculation or conjecture. He also instructed "In determining the amount of * * * damages, you may consider the * * * mental and physical pain as the Plaintiff has experienced." Appellant excepted to the latter instruction because the

court did not point out that such mental and physical pain must be a conscious pain.

 The trial court viewed his instructions as ample and determined that the jury had not been misled when this matter was again urged upon application for a new trial. It would have been proper for the trial court in express words to have stated to the jury that damages could only be awarded for conscious pain since such is a correct statement of the law. However, we believe when he instructed that damages may only be awarded for pain experienced, the jury was in effect told and it could only have understood this to mean conscious pain for if one is unconscious, he does not **experience** pain. To experience something is to "meet with, feel, suffer, (or) undergo" it. Webster's Third New International Dictionary. In Renaldi v. New York, New Haven & Hartford Railroad Company, 2 Cir., 230 F.2d 841, 59 A.L.R.2d 1371, an injured person lived 3 1/2 days after the accident and was conscious a substantial portion of that time; the court in instructing on damages did not qualify "pain and suffering" by the word "conscious". The court disposed of the alleged error in instructions by saying "We think, however, that the charge of the trial judge was phrased in terms connoting experiental reality, and that the jury hearing it would consider only that pain actually experienced by the deceased." We reach the same conclusion in this case.

### Claim of excessive damages.

 Appellant assigns error by a two pronged attack upon the verdict as excessive and contends the trial court erred when it denied his application for a new trial. Under 59a(5) RCP he argues the damages are excessive and appear to have been given under the influence of passion and prejudice. Under 59a(6) RCP he urges the evidence is not sufficient to justify the verdict. The two grounds complement each other and urging one does not operate to exclude the other. It is true if a verdict is found excessive and determined to have been given under the influence of passion and prejudice, it would follow that the evidence does not sustain it. However, a determination that a verdict was not rendered under the influence of pas-

sion and prejudice does not foreclose a party from asserting that it is not supported by the evidence. Schoenrock v. City of Sisseton, 78 S.D. 419, 103 N.W.2d 649; Hotovec v. Howe, 79 S.D. 337, 111 N.W.2d 748.

The jury fixed damages at $30,000. Doctor, hospital and ambulance bills totaled $11,259.10 leaving $18,740.90 for pain and suffering. Mrs. Ebright lived for 256 days after the accident. On March 10, 1966, Dr. McVay, one of her doctors, wrote plaintiff's counsel that "her current status is one of a completely unconscious woman", and one who would only respond to painful stimuli. The record reveals that this condition continued until her death and appears to have gradually progressed to that status from four to six weeks before the doctor so advised counsel. Appellant's argument on excessive damages is predicated primarily on his contention that Mrs. Ebright was at all times after the accident either unconscious or semi-conscious and consequently she could experience little or no pain and an award in the amount indicated is not justified by the evidence. In effect this is a subsection 6 attack and rules out passion and prejudice.

██ ██ Nevertheless, an examination of the record discloses nothing which we feel would justify us in holding the verdict was given under the influence of passion and prejudice. The amount is not so unreasonable as would raise a presumption that it was the result of passion and prejudice. Gamble v. Keyes, 39 S.D. 592, 166 N.W. 134; Stene v. Hillgren, 77 S.D. 165, 88 N.W.2d 109. For us to so presume "The damages * * * must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice or corruption." Schuler v. City of Mobridge, 44 S.D. 488, 184 N.W. 281; Weidner v. Lineback, 82 S.D. 8, 140 N.W.2d 597. This is not such a verdict.

Mrs. Ebright sustained severe injuries to the left side of her forehead, eye and face. The left eye was torn from its orbit. Facial and left cheek bones were fractured and the left side of her skull was laid open revealing portions of the frontal lobes of

her brain. Emergency surgery was performed on the night of the accident by Dr. McVay and follow up surgery by Dr. Brown at Sioux City a few days later. Dr. McVay did further surgery on January 17th. Spinal taps were also made to relieve pressure on the brain. On two occasions through movements of limbs or body the patient reopened wounds on her head and face. She was made to wear gloves and restraints on her hands and a Posey Belt.[8] A ventriculogram was performed by Dr. Brown on February 23rd and disclosed the brain was atrophying or degenerating and chances of subsequent improvement were virtually nil.

We have already alluded to the nurses' notes showing Mrs. Ebright's condition during the period after the accident to February 16th.[9]. They graphically portray the condition of this woman during that time. These notes reveal instances of pain and suffering and occurrences from which the jury could infer she experienced pain and suffering despite use of sedatives. Other evidence was also offered which would bear on her capacity to experience pain and suffering. Dr. McVay testified when she was in the emergency room immediately after the accident: "she was somewhat responsive but was not quite clear as to what happened. But she pointed to her face and said it hurts. She at one time was sitting up when she came into the emergency room". During the period following December 22, 1965 and into January 1966, Dr. McVay testified he saw her daily and he would see her sitting in a chair or on the edge of the bed and she would walk in the halls with a nurse assisting. He was asked:

"Q. Did she respond to any questions * * * at this time? A. Yes, to simple questions, as to whether she hurt, or how she felt, or if she were hungry. I wouldn't say that any lengthy conversation was possible."

The doctor also testified that during this time she would sometimes feed herself with a nurse in attendance. On cross-exam-

---

8. A Posey Belt is a canvas jacket tied in back. On the sides are attachments to fasten to a bed to prevent the patient from getting out of bed and injuring herself.
9. See Note 6 supra.

ination as to her consciousness during the period from December 22nd to January 17th, he said the nurses' notes would "chronologically and accurately" show her condition and "* * * there were periods that I have mentioned, when she would * * * look around the room and I believe recognize her family and myself. She certainly was not unconscious, and at periods not even semi-comatose, but the level of sensorium I would hesitate to estimate."

Dr. Brown, the Sioux City physician, whose deposition was taken before Mrs. Ebright's death[10] alternately described her as semi-conscious[11] and unconscious.[12] The nurses' notes during her first hospitalization at Sioux City are contra.[13]

The husband testified Mrs. Ebright was conscious while waiting for the ambulance and said "Touch me. Don't leave me"; she walked to the ambulance. During December and January, he talked to his wife and she would answer. He testified:

"Q. Did she ever complain to you about injuries or pain?

A. Yes. If I talked to her for just a few minutes she would say it hurts too much."

A daughter and son testified as to their observations and conversations with their mother during hospital visits in December and January. They testified to her watching television, concerning herself about school matters, and to her complaints about food and restrictions on use of her hands because of the gloves. They saw her sitting up in bed.

---

10. The deposition was taken on August 18, 1966, two days before Mrs. Ebright died.

11. When he saw her on December 9, 1965, he testified "she was semi-conscious at the time of my original examination."

12. When asked as to her "semi-conscious to unconscious state" he testified: "these are kind of vague terms but the semi-conscious is or to unconscious is that this woman has not talked in a normal manner or responded in that sense of the normal human. She has been unable at times to move her arms and legs or react to pain, if you would pinch a finger she would move it but naturally as far as intellectual processes, I should correct myself and say that she truly has been essentially unconscious."

13. Exhibit 12. Nurses' notes for period from December 9, 1965 to December 22, 1965. Excerpts: attempting to do what's asked; moans and has followed verbal requests, moans when given shots, answers questions with complete sentences; talking very plain, drinking from cup and talking; answers questions, asked to go to bathroom; responding and appears more alert, requested bed pan.

■ We believe the evidence is sufficient to show that Mrs. Ebright was conscious a substantial portion of the time from December 7, 1965 to at least the middle of January 1966 and possibly longer and capable of experiencing pain and suffering. By its verdict the jury so determined and the plaintiff was entitled to be compensated therefor.

In Flory v. New York Central Railroad Co., 170 Ohio St. 185, 163 N.E.2d 902, a plaintiff's decedent died in a hospital to which he was removed ten hours and forty minutes after the accident, and the evidence showed during a part of this time he was unconscious or semi-conscious. A jury awarded $7,500.00 for pain and suffering and the verdict was approved in the trial court, intermediate appellant court[14] and the Supreme Court. In affirming the latter court wrote in language we approve:

> "Of all the items of compensatory damages which it may become the duty of a court or jury to assess, that which will compensate for human pain and suffering is perhaps the most difficult to determine. Such determination is susceptible of no mathematical or rule of thumb computation, and no substitute for simple human evaluation has been authoritatively suggested. In this case we cannot say as a matter of law that the amount determined by the jury to be reasonable compensation for the pain and suffering which it found to have been suffered is unreasonable."

■ Although the verdict is liberal even under present money value standards, we cannot say as a matter of law that the evidence is insufficient to justify the verdict. Hotovec v. Howe, supra. There are no accurate means of monetarily evaluating the pain and suffering which Mrs. Ebright endured and the amount of damages to be awarded must largely be left to the good judgment of the jury. Ross v. Foss, 77 S.D. 358, 92 N.W.2d 147; Jorgenson v. Droneberger, 82 S.D. 213, 143 N.W.2d 869.

---

14. Flory v. New York Central Rd. Co., 109 Ohio App. 501, 163 N.E.2d 796.

### Sufficiency of Evidence of Negligence.

■ We have reviewed the evidence of negligence and are satisfied it presented a submissible case. Material portions were disputed and resolved in respondent's favor by the jury. To detail such evidence would only prolong what is already a long opinion. There was ample evidence to sustain the jury's determination of liability.

Judgment affirmed.

All the Judges concur.